(102 So. 330)

No. 26484.

### SMITH v. ALMOND.

(Dec. 1, 1924.)

*(Syllabus by Editorial Staff.)*

**1. Boundaries &=54(4) — Survey departing from field notes of former surveys by government surveyors held erroneous.**

Survey of disputed boundaries in which surveyors departed from field notes made by government surveyors in establishing boundaries of township and laying out section lines *held* erroneous.

**2. Boundaries &=54(4)—Surveyor has duty to reproduce lines as originally run as closely and accurately as possible.**

Surveyor in surveying disputed boundary has duty to reproduce lines as originally run as closely and accurately as possible.

**3. Boundaries &=37(3)—That point considered as corner common to sections checked with half-mile post in another township held insufficient to establish such point as common corner.**

Where each township was surveyed by government as separate entity, fact that point reached by subsequent surveyors on northern boundary of township checked with recognized government half-mile post in another township was insufficient to establish such point as common corner, and line from such corner to markings on southern boundary of township as correct.

**4. Boundaries &=54(4)—Survey not in agreement with former government survey held incorrect.**

Where surveyors in settling disputed boundaries departed from field notes made by government surveyors in laying out township boundary and section lines and located corner common to certain sections in swamp, contrary to notes of government survey placing it on hill, and such survey was not in accordance with lines of possession in township, it was incorrect.

**5. Boundaries &=53—Surveys made at instance of interested party not accepted to establish disputed boundary.**

Where survey to settle disputed boundary was incorrect, surveys made at instance of interested party to establish boundaries will not be accepted, but case will be remanded for another survey to be made from designated point in accordance with field notes by government surveyor.

Certiorari to Court of Appeal, Second Circuit.

Suit by J. B. Smith against R. J. Almond. Judgment homologating a survey was affirmed by the Court of Appeal, and plaintiff applied for writs of certiorari and review. Judgment of Court of Appeal under review and of district court annulled and set aside, survey rejected, and case remanded.

Nettles & Bethard, of Coushatta, and Smitherman & Tucker, of Shreveport, for appellant.

J. F. Stephens, of Coushatta, for appellee.

OVERTON, J. Plaintiff and defendant are the owners of contiguous estates. One of plaintiff's estates lies in section 9, township 12 north, range 9 west, and one of defendant's in section 8 of the same township and range; the section line common to sections 8 and 9 being the boundary between these two estates. The other of plaintiff's estates lies in the N. ½ of the N. W. ¼ of section 8, in the aforesaid township and range, and the other of defendant's in the S. ½ of the N. W. ¼ of that township and range; the

line dividing the N. ½ of the N. W. ¼ from the S. ½ of the N. W. ¼ of section 8, being the boundary between these two estates.

As differences arose between Smith and Almond as to where the section line ran, dividing the estates first mentioned, and as to where the line ran dividing the estates secondly mentioned, plaintiff instituted the present suit against defendant for the purpose of establishing the boundaries between the properties owned by him and by defendant. R. E. McKnight, a surveyor, was appointed to make a survey for the purpose of enabling the court to establish the boundaries in dispute. McKnight made the survey, prepared a plat and procés verbal of it, and made report to the court accordingly. Defendant moved the court to homologate the survey made by McKnight, and plaintiff opposed the motion to homologate it. The motion was tried, and judgment was rendered approving McKnight's survey and establishing the lines between the lands of plaintiff and defendant accordingly. Plaintiff appealed to the Court of Appeal of the Second Circuit, and obtained judgment there, setting aside the judgment of the district court, and remanding the case, with directions that another survey be made, and giving certain instructions as to the manner of making it. McKnight was again appointed to make the survey, and Gaienne Hyams, who was also a surveyor, was appointed to assist in making it. The survey made by McKnight and Hyams met with defendant's approval, and defendant, therefore, moved the court to homologate it. Plaintiff opposed its homologation. Judgment was rendered by the district court homologating the survey, and plaintiff appealed. The Court of Appeal of the Second Circuit affirmed the judgment appealed from, and plaintiff applied to this court for writs of certiorari and review for the purpose of having the judgment of the Court of Appeal reviewed. The application

was granted, because the issue indirectly involved the lines of an entire township, and because it seemed to us that the judgment of the Court of Appeal, affirming the judgment of the lower court, was erroneous.

The estates, as we have seen, between which the boundaries are to be established, are located in township 12 north, range 9 west. This township was laid out or surveyed in 1814 by John Dinsmore, Jr., a deputy surveyor of public lands. The field notes and the plat made by him show that he ran his lines due north and due south and due east and due west. Dinsmore did not sectionize the township, but merely surveyed and established the township lines. The work of sectionizing it was done in 1825 by James M. McCauly, a deputy United States surveyor. The field notes made by McCauly do not indicate that he differed with Dinsmore with respect to the work done by him. However, in 1835, J. C. Naylor, who does not appear to have been a United States surveyor, nor to have been acting for the government, made a resurvey of the boundaries of the township. In making this survey, he reached the conclusion that Dinsmore did not run the eastern boundary due north, as he said he did, but that, in fact, he ran the last four miles of that boundary north one degree east.

McKnight and Hyams, in making their survey, adopted Naylor's view. After establishing what they considered to be the southwest corner of section 36, they ran north, 80 chains, to what they considered to be the southwest corner of section 25; thence west 80.20 chains, to what they considered to be the southwest corner of section 26; thence north, 80.30 chains, to what they considered to be the southwest corner of section 23; and thence west, 80.04 chains, to what they considered to be the southwest corner of section 22. At this point they were two miles north of the southern boundary

of the township. Hence, as Naylor had said that the last four miles of the township had been run north one degree east, and as they themselves had reached the conclusion that Naylor's view was correct, instead of running due north, they ran from this point north one degree east, 80.31 chains, to what they considered the southwest corner of section 15; thence due west, 79.92 chains, to what they considered to be the southwest corner of section 16; thence north one degree east, instead of due north, to what they considered to be the southwest corner of section 9 and the southeast corner of section 8, the sections in which the estates involved herein lie. From this point they continued their course north one degree east to the northern boundary of the township.

In running from the southwest corner of section 36 to the northern boundary line of the township, neither McKnight nor Hyams point to any marks as evidencing a survey made by the government. In fact, both of them say that they found no marks at all on the interior of the township, evidencing such a survey. When they reached the northern boundary of the township, they concluded that they had reached the corner on that boundary common to sections 4 and 5. They reached this conclusion for two reasons, one of which was that the line they had run, assuming that it was correctly run —and they believed it to have been so run— led them to what should have been that corner. The second reason was that this point checked with the original government mark at the half-mile corner, lying north of this point, in the township above it. The result of the survey was that the section line, common to sections 8 and 9, was thrown considerably east of the line that plaintiff considered was the true boundary between those sections, and, consequently, the western boundary of plaintiff's property, in section 9, was thrown farther east than he consid-

ered that it, in fact, lay. Hence, his opposition to the homologation of the survey.

[1-3] We find no difficulty in holding that plaintiff is correct in his opposition to the homologation of the survey. It is the duty of a surveyor in making his survey to reproduce the lines as originally run as closely and accurately as possible. The question is: Did McKnight and Hyams so reproduce the section line, constituting the boundary between the estates of plaintiff and defendant, lying in sections 8 and 9? We do not conclude that they did. This they could not have done in pursuing the course adopted by them, for the simple reason that they departed from the field notes made by Dinsmore, in establishing the eastern boundary of the township, and from the field notes made by McCauly, in laying out the section lines, by running north one degree east after reaching the second milepost, from the southern boundary of the township, instead of due north, as called for by those notes. In so departing it will be recalled that they found no government markings on the interior of the section, indicating that they were on the proper course, or confirming their line. It is true that after reaching the northern boundary of the township they felt satisfied that they had reached the corner common to sections 4 and 5—the sections immediately north of sections 8 and 9, in which latter the lands of plaintiff and defendant lie—but this conviction was largely due to the fact that the point they considered as being that corner checked with a recognized half-mile post in the township immediately to the north. However, as the government, in making its surveys, surveyed each township as a separate entity, the fact that the point reached by them on the northern boundary of the township checked with a half-mile post in another township is insufficient to establish that the surveyors, Hyams and McKnight, were at

the corner common to sections 4 and 5 of the northern boundary of the township, and hence that the line run by them was correct, upon the theory that it was confirmed by the government markings at both ends, that is to say, on the southern boundary of the township, by markings found there, and on the northern boundary, in the manner just indicated.

[4] Not only is the evidence insufficient to show that the line run by McKnight and Hyams is correct, but the record contains evidence showing rather conclusively that they were not on the correct line. For instance, when they reached what they thought was the corner common to sections 4, 5, 8, and 9, near the estates in question, they located the corner in a swamp; whereas, McCauly's field notes call for it on high land. This may be more clearly brought out by quoting the following evidence given by McKnight:

"Q. Was the northeast corner of section 8 of the corner common to sections 5, 4, 8, and 9 located in a branch or bayou?
"A. No, sir; it is not in a branch or bayou.
"Q. Is it right close to it?
"A. Well, it is down in the swamp; it seems to me there is a little dry bayou there— a flat place.
"Q. Isn't it down in the overflow part of the swamp of Grand bayou?
"A. Yes, sir; it is in the swamp.
"Q. Don't the field notes call for its being on a hill?
"A. They don't say hill; they say high land.
"Q. Didn't Mr. Smith call your attention to this fact when you were there?
"A. Yes, sir; I think he did."

Moreover, it may be observed that McKnight concedes in his evidence that, if his survey is correct, quite a number of property owners in the township have encroached beyond their lines, and we think that the record otherwise establishes that, if his survey is correct, such is the case as to almost all property owners therein. In short, it appears that the survey made by McKnight and Hyams is not in accord, generally speaking, with the lines of possession in the township. This fact strongly suggests, we think, the incorrectness of the survey.

While McKnight and Hyams failed to find any government markings on the interior of the township, yet, in our opinion, the clear weight of the evidence establishes that there are at least two recognized section corners in that subdivision, one of which is the Bernstein corner, being the corner common to sections 16, 17, 20, and 21, and the other the Bayou corner, which is the corner common to sections 14, 15, 22, and 23. In addition to our own finding it may be observed that the Court of Appeal, when this case was first before it, at the time the case was remanded to make a second survey, said:

"The evidence in the record, we think, very clearly shows that there are at least two well-recognized government section corners in the southern part of township 12—9, which would furnish a correct starting point for locating the two disputed lines. One of these corners is the corner common to sections 16, 17, 20, and 21, known to all surveyors as the Bernstein corner. This corner is one mile directly south of the southeast corner of section 8 and southwest corner of section 9. The other corner is the one known to all of the surveyors as Grand Bayou corner. It is two miles east of the Bernstein corner and is the common corner of sections 14, 15, 22, and 23. These corners have been recognized, and of which fact there seems to be no dispute, by at least six of the surveyors who have been connected with the several surveys relating to the disputed lines in the township in question. This being true, we can see no sufficient reason why the true and correct line between sections 8 and 9 cannot be surveyed and established by starting at one of these corners and running the lines in accordance with the government field notes. This, it seems to us, would be but following the course of surveying recognized by the Federal Land Department and the jurisprudence of this state."

It may also be observed that the Court of Appeal of the same circuit, in the case of

Bailey v. Penny, which case involved the correct location of the section line dividing sections 17 and 18 of the township in which the property in the present case lies, found that the Bernstein and Bayou corners were recognized corners, and so held. McKnight and Hyams, it may be observed, did not go to the Bernstein corner; nor did they make any effort to locate the Bayou corner. In our view, the survey made by them should be rejected.

[5] Plaintiff has offered in evidence other surveys, made merely at his instance, to establish the boundaries between the estates in controversy. He insists that we adopt these surveys and establish the boundaries accordingly. We think it more in accord with law and justice, however, not to do this, but to remand the case for another survey, to be made from a designated point and in accordance with the field notes made by McCauly. This starting point we shall designate as the Bernstein corner. It is the nearest recognized corner to the property in question, and is south of that property. It is one of the corners that the Court of Appeal had in mind when it rendered its first decree.

For the reasons assigned, it is ordered, adjudged, and decreed that the judgment of the Court of Appeal, under review, and the judgment of the district court, in this case, be annulled and set aside, that the survey made by McKnight and Hyams be rejected, and that this case be remanded to the trial court for another survey, or surveys, to start from said Bernstein corner, and to be made in accordance with the field notes made by McCauly; the costs of this court and of the Court of Appeal to be borne equally by plaintiff and defendant, and those of the trial court to await the final disposition of this case.

THOMPSON, J., recused.