This very complicated and most confusing litigation has been before us twice before.
In Alfonso v. Ruiz, La. App., 1 So.2d 332, we considered a motion to dismiss the appeal, and in Alfonso v. Ruiz, La. App.,2 So.2d 480, 484, we considered earlier phases of the litigation and remanded the matter to the District Court (Twenty-fifth Judicial District Court for the Parish of St. Bernard) because we found that the parties had agreed in writing "that the principal issue in the case was one of boundaries" and had further agreed in writing to the appointment of Corwin A. Robert, as surveyor and that they would "furnish their titles to the said surveyor."
In the opinion which we rendered at that time we said that we doubted very much whether "the real controversy does involve boundaries." We held however that since the parties had agreed to convert the litigation into an action in boundary we would remand it in order that it might be proceeded with in accordance with the requirements of the Civil Code concerning actions in boundary,
The matter is again before us on appeal by Alfonso, the plaintiff, from a judgment homologating the proces verbal of the surveyor, Corwin A. Robert, in which he showed that he had fixed the division line between the property of Alfonso and the property of Ruiz in accordance with the contention of the defendant, Ruiz, and as shown on the map of survey prepared by the said surveyor. *Page 395 
Now that the matter is again before us and the record includes the testimony, the various deeds and other documents and we are able to understand exactly what the controversy is about, it has become very evident that our originally expressed suspicion was well founded and that in truth the litigation really presents a conflict in titles and not a contest over what should be the correct location of the boundary line between two tracts of land, the titles to which are not in dispute. If the contention of Alfonso is correct, Ruiz owns practically no property at all. Therefore it is obvious that it is a dispute over titles which is presented.
It is conceded that the land of Alfonso fronts on Bayou Terre aux Boeufs and has a frontage on that bayou of 6 3/4 arpents more or less. It is conceded too that that tract runs back to the 20 arpent line between straight but not parallel side lines. Though this property, as we have shown, is only about 6 3/4 arpents in front on Bayou Terre aux Boeufs it widens towards the 20 arpent line and is 2,700 feet in width on that line.
Back of the 20 arpent line, and between it and the 40 arpent line is the property claimed by Ruiz. Alfonso contends that his tract does not end at the 20 arpent line but extends back to the 40 arpent line. As we have said, since Alfonso claims that his property runs to the 40 arpent line; if he is correct, then Ruiz owns no property between the 20 arpent line and the 40 arpent line back of the Alfonso property.
There is in reality no dispute over the location of the 20 arpent line, the entire controversy depending upon whether Alfonso has title to the land back of the 20 arpent line or not. The surveyor held that the Alfonso title did not extend beyond the 20 arpent line and fixed the rear boundary of the Alfonso property and the front boundary of the Ruiz property at that line.
Alfonso contends that the survey was not conducted in accordance with the requirements of the Civil Code and that the surveyor should have run the lines of all boundaries of both tracts. The surveyor says that he established only the line which formed the boundary between the two tracts and that he ran the entire boundary of the Alfonso tract merely because he found it necessary to do that in order to fix the 20 arpent line.
[1] So far as the Codal requirements for the conducting of a survey are concerned, we are convinced that the surveyor complied with those requirements and that in making his survey he did everything that he should have done. We are also of the opinion that there was no necessity for him to run the entire outline of all the tracts as all that a surveyor in an action in boundary is required to do is to establish the division line or boundary so far as it is in dispute. C.C. Art. 824.
[2] The question which has given us much concern is whether the surveyor, when he found that the two titles conflicted to the extent that one would have practically eliminated the other, should have referred the matter back to the court for instructions or could himself decide which of the two titles was superior and establish the line in accordance with his decision on this question of superiority of title. We think that in such a situation where "the parties interested, or any of them, shall make opposition" to the method of conducting the survey, Article 837 of the Code requires that the surveyor must "desist, and refer the parties to the court, to have a decision of their respective rights * * *"
Therefore, if the record convinced us that at that stage in the survey Alfonso or anyone representing him had made "opposition" the surveyor should have desisted and should have referred the matter to the court for a determination of that question.
But we are of the opinion that such opposition was not made. Alfonso, in his testimony, admits that he did not raise objection at the time of the making of the survey. We quote from his testimony:
"Q. Did you protest to the surveyor about not going to the forty arpent line? A. No, sir."
It is contended that one of the chain men, Alvin Hebert, protested that the survey should have gone to the 40 arpent line. Referring to his conversation with the surveyor, Hebert says: *Page 396 
"* * * I said to him — I asked him, 'Aren't you going further than the twenty arpent?' and he said, 'No; this is as far as I'm going.' I said, 'Why don't you go to the forty arpent? You are supposed to go there.' He said, 'No, I'm not going any further.' * * *."
The surveyor, however, contradicts this, and, concerning the failure of Hebert to continue with the survey after the first day, testified as follows:
"Q. The first witness here, who is a brother-in-law of this man, (Alfonso) mentioned having made some protest to you when you reached the twenty arpent line, and that you said you were not going any further. What have you to say about that? A. No; I don't think I said what I was going to do when I reached there. We closed for that day; and I had a lot of work to do and I did not go back the next day; I went back on August 9th. I don't think I said to anybody what I was going to do when we came back.
"Q. Did he make any protest to you, and insist that you go beyond, to the forty arpent line? A. No, sir."
He was asked on cross-examination whether he was sure "that no protest was made to you about not running the line back to the forty arpent line," and he answered: "I don't think anybody knew what I was going to do. I just said, 'It's about time to quit work now, and we'll stop here.' "
The record shows clearly that Hebert was not present on the second day of the survey and that it was because of this absence that he refused to sign the proces verbal and not because the survey was not continued beyond the 20 arpent line
It is very difficult to determine just what is the contention of Alfonso with reference to the issue which is before us. The fact of the matter is that he very obviously depends entirely upon establishing the fact that his title runs to the 40 arpent line, and in order to establish this title depends upon a so-called act of correction which is in the record and which we shall later discuss.
Ruiz, on the other hand, has offered a fairly complete chain of title according to which his property does commence at the 20 arpent line in the rear of the Alfonso property.
[3] For two reasons, we think that the act of the surveyor in not at that time referring the matter back to the court was not of sufficient importance to justify a reversal of the judgment homologating the proces verbal, first because formal objection was not made by Alfonso nor by any other persons at that time, and second, because when the court considered the question of the propriety of homologating the proces verbal of the surveyor, Alfonso could have produced all of his titles and could have at that time raised the same questions which he could have raised had he made opposition during the progress of the survey.
He did not offer his titles, taking the position that there was nothing before the court except the question of whether or not the proper formalities had been complied with in the making of the survey, and whether or not the surveyor should have continued the line around both properties instead of merely running the division line between the two tracts.
As we have said, there is some dispute as to whether Alfonso is correct in his contention that all that was presented in the District Court was the question of whether the formalities were properly complied with in the conducting of the survey or whether the lower court actually considered the merits of the entire controversy.
[4-6] If the case as it now stands relates only to the homologation, this appeal would have to be dismissed as a judgment homologating a proces verbal of a surveyor in an action in boundary is merely an interlocutory order and does not cause irreparable injury. Painten v. Pilie, 198 La. 713,4 So.2d 804, 805. However we are of the opinion that the trial in the lower court involved not only the opposition to the method by which the survey was conducted but also a submission of the issues presented on the merits, and it appears that it was so treated by the judge of the District Court. At one point in the trial the Court said:
"I don't see why the entire case should not be tried. You might take testimony on *Page 397 
that and make up the case; and then the court can pass upon the matter of the survey. If he finds that wrong, the case probably would end there, and if he finds it right, the case could be passed upon on the merits."
It is clear that the judgment of the District Court disposed of the merits of the matter as well as the matter of the homologation of the proces verbal as it included all that a judgment in a boundary suit need include. It reads, in part as follows:
"It is ordered, adjudged and decreed that the plan of survey and proces verbal of the said Corwin A. Robert, Civil Engineer, dated September 7th, 1938, filed in this proceeding, be, and the same is hereby ratified and approved, and, accordingly, that the division line shown on the said map of survey which divides said Lot 31 from the tract of land marked Section 136 on said survey, be, and is hereby fixed as the division line between the property belonging to the plaintiff and the property belonging to the defendant herein."
We feel that, as was said in the Painten case — "it is the judge's duty to examine the report in connection with the title of the parties and any other admissible evidence which might be produced upon the trial of the merits of the case. * * *" If this is true, then the judge of the lower court was correct in hearing the entire case before passing upon the question of the validity of the proces verbal and particularly since the survey, the proces verbal and other evidence before the lower court constituted evidence sufficiently definite to enable that court to render a final judgment on the merits. Roberts Lumber Co. v. Morgan et al., 136 La. 829, 67 So. 921.
[7] When we come to consider the two titles as we find them in the record, we think that there can be no question at all about the superiority of the title of Ruiz to the land between the 20 arpent line and the 40 arpent line. Introduced in evidence to establish his chain of title were various acts of sale and sheriff's deeds dating from June 11th, 1939 back to December 18th, 1917. From these acts and the certificates attached it is clear that he obtained title to the irregular tract of land adjacent to the Alfonso 'property extending from the 20 arpent line' to the 40 arpent line.
Concerning Alfonso's title, there are included in the record as exhibits, two acts of sale, dated 1829, executed by the testamentary executor of Mary Clark and Francois du Saac de la Croix. The first transfers to Juan Alfonso a tract of land measuring "twelve arpens front on Bayou Terre aux Boeufs and extending a depth of twenty arpens on either side of said Bayou." (It will be noted that this act included only a depth of 20 arpents on the side of Bayou Terre aux Boeufs with which we are now concerned.) The other act transfers to Francois Alfonso a tract measuring "eight arpens front on the Bayou Terre aux Boeufs and extending in depth twenty arpens on each (side of) said Bayou." So that this act too includes a depth of only twenty arpents on the side of Bayou Terre aux Boeufs with which we are concerned.
There is in the record a certificate of the Register of the State Land Office, dated August 15, 1934, which describes the property of Antonio Alfonso which was adjudicated to the state for non-payment of taxes for the year 1893 and which was redeemed in 1934, as measuring 6 3/4 arpents front more or less on both sides of the Bayou Terre aux Boeufs and containing in all 270 arpents. A simple mathematical calculation will show that this property which was sold for taxes and which was later redeemed could not have extended beyond the 20 arpent depth on either side of the bayou. Thus, in none of these acts is there the slightest thing to indicate that the Alfonso property extends beyond the 20 arpent line from Bayou Terre aux Boeufs.
We next consider the only deed which in any way intimates that the Alfonso property extends to the 40 arpent line. This deed is the act of correction which we have already mentioned. This act of correction was executed on May 31, 1937. Sometime prior to its execution, Antonio Alfonso had sold to Peter Alfonso this tract of land measuring 6 3/4 arpents on Bayou Terre aux Boeufs by a depth of 20 arpents. The so-called act of correction *Page 398 
which was executed on May 31, 1937 purports to correct the original transfer so as to make it include a tract of land 40 arpents in depth. The parties to this act of transfer who were only members of the Alfonso family state that the said land was surveyed by Victor E. Hawkins and that his plan shows that the property extends to the 40 arpent line and that in the original transfer from Antonio Alfonso to Peter Alfonso it was intended to transfer all of the land to the 40 arpent line. However, no where in the deed of correction is it shown how Peter Alfonso acquired the land to the 40 arpent line, and it is quite clear from the so-called act of correction itself that it is only the so-called Hawkins survey which forms the basis for the act of correction. This act of correction has no legal effect whatever in conferring title to property beyond the limits of that described in the two acts as it is nothing more than an exparte document which cannot affect the rights of third persons and cannot convey title to the lands to which the predecessors of Alfonso had no title. Furthermore, the so-called Hawkins survey on which alone the act of correction is based did not result from an examination by Hawkins of titles. In his testimony he admits that his survey was not based on any titles and that when he examined the Alfonso titles as recorded, they called for no land beyond the 20 arpent line but that he made the survey as requested by members of the Alfonso family upon their representation that they were holding the additional land under a lease and were desirous of ascertaining the actual, physical boundaries thereof.
The Hawkins' survey and the act of correction have no effect whatever so far as title is concerned.
[8] We think too that the invalidity of this act of correction was, in effect, admitted by plaintiff when he entered into the agreement that the only issue involved in this case was one of boundary. In converting the suit into an action in boundary each of the parties necessarily admitted the title of the other. The legal result then is this: If Ruiz is said to have admitted plaintiff's title calling for 40 arpents as evidenced by the act of correction, then he would have admitted himself completely out of court and would have admitted that he had no interest in the land which is in conflict, whereas the admission by Alfonso of the title of Ruiz would merely be an admission that his tract terminated at the 20 arpent line and that therefore the dispute involved only the correct location of that line.
For these reasons the judgment appealed from is correct.
[9] As is shown in Alfonso v. Ruiz, La. App., 2 So.2d 480, there is still involved the question of the claim for damages which was filed by Ruiz as a reconventional demand. We find in this record nothing upon which that claim may be decided.
We conclude, therefore, that although the judgment which is appealed from should be affirmed, there should be reserved to Ruiz the right to proceed in some other action on any claim for damages which he may have. We will therefore dismiss his reconventional demand as in case of non-suit, which will have the effect of reserving to him any such right as may exist.
It is therefore ordered, adjudged and decreed that the judgment appealed from be and it is affirmed at the cost of appellant, and it is further ordered, adjudged and decreed that the reconventional demand of Albert Ruiz against Philip Alfonso be, and it is dismissed as in case of non-suit, Philip Alfonso, plaintiff and appellant, to pay all costs.
Amended and affirmed. *Page 399