LANDRY, Judge ad hoc.
This litigation originated as a suit by plaintiff John F. McMichael and his co-owners of certain property situated in Tan-gipahoa Parish, against defendant Philip McMichael, owner of adjoining property, and certain parties to whom Philip Mc-Michael sold timber, seeking damages for an alleged timber trespass and for injunc-tive relief to prevent further intrusion. A temporary restraining order issued followed by a preliminary injunction which was eventually made permanent.
The evidence shows the property of defendant Philip McMichael bounds the property of plaintiffs on the north. The property in dispute is a strip of land measuring 44.22 feet in width running from the eastern to the western boundaries of the two estates.
Plaintiffs’ petition alleges defendant Philip McMichael and the other defendants (acting under a timber sale from Philip McMichael) erroneously cut certain saw logs, timber, poles, pulp wood, fence posts and shade trees on the disputed strip despite the fact the area in question belongs to plaintiffs and was pointed out to defendants as plaintiffs’ property prior to the alleged trespass. Plaintiff contends defendants were in bad faith and, therefore, plaintiffs are entitled to the manufactured value of the timber cut.
Defendants filed exceptions of no right and no cause of action and then answered the petition setting forth that defendant Philip McMichael is the owner of the strip in dispute, it being (according to defendants) part of the George P. McMichael Home Place containing 218 acres acquired by defendant Philip McMichael from the several heirs of said George P. McMichael, deceased. Defendants further contend the boundary between the property of plaintiffs and the defendant Philip McMichael was established by a survey made in 1905 at which time the estate of George P. Mc-Michael was partitioned by his heirs. In addition, defendant Philip McMichael plead ownership of the disputed parcel of land by virtue of his alleged possession thereof for 30 years. In a supplemental and amended petition, plaintiffs submitted a plea of thirty years prescription before the lower court and on appeal filed pleas of ten, twenty and thirty years prescription.
The record does not reflect any ruling of the trial court on the exceptions of no right and no cause of action filed on behalf of defendants. Said exceptions were not urged before us either orally or in brief and must be considered abandoned.
After trial on the merits, the lower court rendered judgment fixing the boundary between the properties, rejecting plaintiffs’ demand for damages for wood and timber but awarding plaintiff damages in the sum of $500 for shade trees destroyed and rejecting plaintiffs’ demand for $20 paid for completion of a survey. Defendant has appealed asserting the lower court was in error in establishing the boundary on a line fixed by Clifton Webb, Surveyor, and indicated by a dotted line on plat of Webb’s survey introduced in evidence (it being defendants’ contention the line lies 44.22 feet *544 south of the line marked by Webb). In the alternative, defendants contend the evidence does not support the finding that the line run by Webb is the true boundary as fixed in the 1905 partition and consequently no boundary line was in fact established and the case should be remanded to the lower court with instructions to appoint a competent surveyor to establish the true boundary line according to the 1905 partition.
The parties involved in this litigation are related, defendant Philip McMichael being the uncle of the three plaintiffs. All parties concede their respective properties were formerly part of the estate of their common ancestor, George P. McMichael, whose heirs partitioned the property in 1905, at which time the boundary between plaintiffs’ property and that of defendant was established. However, the parties are in dispute as to the location of the line established in 1905, as well as to the surveyor who ran the line. Testimony adduced by plaintiffs is to the effect the 1905 survey was made by one Kerrigan, whereas, the testimony of defendants’ witnesses is to the effect said survey was made by one Frank M. Edwards, a young surveyor just out of school but that the map of survey was made from Edwards’ notes by one Ogle.
The testimony of Clifton G. Webb, Surveyor, shows that he is a graduate civil engineer and surveyor with 20 years experience. In February, 1957, he was employed by Sydney McMichael (son of defendant Philip McMichael) to run the boundary line between the property of his father and that of plaintiffs which is the line in dispute. He went upon the property accompanied by Sidney McMichael and John W. McMichael, plaintiff, at which time he was informed the parties agreed they considered the southwest corner of defendants’ property and the northwest corner of plaintiffs’ property to be that point where the headright line forming the western boundary of their respective tracts changed its bearing from North 0 degrees 30 minutes west to North 19 degrees 45 minutes east as shown on Webb’s plat of survey introduced in evidence as Exhibit D-l. To prove this mutually accepted starting point, he located an established corner between Philip McMichael (defendant) and that of Houeye who owns the property bounding Philip McMichael on the north, and measured south along the headright line (the western line of the Philip McMichael property) a distance of 23.60 chains to the break in the headright, indicated to him as the starting point of his survey, at which point he found a witness tree. From this point, he then ran the boundary line eastward South 70 degrees 30 minutes east, which bearing is that of the north and south boundary lines of the headright in which these properties are situated. He proceeded to mark the boundary by blazing trees and setting stobs until he reached a creek approximately midway between the east and west lines of the properties at which point Sidney McMichael (son of defendant) ordered him to discontinue the survey and refrain from blazing additional trees. At this juncture, he was requested by John McMichael to complete the running of the line which he did and although he blazed no trees from the creek eastward to the east property line, he did set some stakes. He did not measure the distance of the line he ran but on information obtained from the records indicated its measurement at 90.23 chains on his map of survey. After running the line shown on his map as a dotted line, he examined the titles of the parties and measurements appearing on the government survey of the headright in question and then concluded the line he ran was not in fact the true boundary of the properties but that said boundary lay 44.22 feet south thereof. He then drew his map of survey indicating the line he ran as a dotted line extending from the break in the head-right eastward to the eastern boundary of the estates and designating the actual boundary as a solid line lying 44.22 feet south thereof and running parallel therewith. Webb made no attempt to establish *545 any corners other than the one between the property of defendant and that of Houey. He did not run the line which he designated as the true property line and did not know its exact location with respects to fences and improvements on the property of plaintiffs.
The testimony shows certain boundary monuments along the line commencing at the break in the headright line as well as some surveyor’s marks and blazes on trees. However, the record contains evidence to the effect that some of the monuments situated on the line run by Webb have disappeared, the locations of others have been changed and the existence of some disputed between the litigants. As to the existence of blazes and surveyor’s hack marks on the line run by Webb, the evidence shows the presence of numerous marks some of which are admittedly made by surveyors and others which cannot be definitely identified as having been made during the course of a survey.
Regarding the line fixed by Webb as the boundary, the evidence shows that he did not even run this line and that he was unable to tell whether there were any monuments or surveyors’ marks on the line as he projected it on his survey. It is further shown that the boundary fixed by Webb if projected from the western to the eastern boundaries of the properties, would run through a residence occupied by plaintiff Clayton McMichael and a cotton storage house situated on plaintiff’s property both of which structures have been occupied and used by plaintiffs and their ancestor in title for many years.
Evidence regarding the location of fences on the property is so vague and indefinite as to be of little if any value in determining where the boundary should be established.
Although this action commenced as an action for damages for unlawful cutting of timber, the parties have mutually converted it into an action to establish the boundary' between their respective properties. The answer and reconventional demand of defendant seeks to establish the boundary. The plea of prescription filed on behalf of plaintiffs as establishing plaintiffs’ ownership of the disputed strip constitutes acquiescence on the part of plaintiffs to try the matter as an action to establish boundary. The transcript shows that throughout the trial plaintiffs proceeded on the assumption it was necessary that they establish the location of the boundary to sustain their claim as indeed they must do for their claim for damages necessarily falls unless they establish title to the property on which the disputed timber was cut.
In an action of boundary, the law requires proof of the boundary with legal certainty and the burden is divided among the contesting parties. Russell v. Producers’ Oil Co., 143 La. 217, 222, 78 So. 473.
We agree with the ruling in Alfonso v. Ruiz, La.App., 26 So.2d 393 which holds to the effect that in running a boundary, a surveyor need not necessarily run all the lines of the properties involved but only the line in dispute. However, any line established by survey must be verified and its location substantiated by credible corroborative evidence upon which the courts can act with reasonable assurance of doing substantial justice as between the adverse litigants.
In the instant case the testimony of Webb shows that he did not in fact run the line which his map of survey indicates as the actual boundary line between the properties herein involved. The procedure adopted by Webb impresses us as being unsound, arbitrary and not in keeping with the highest standard of the profession. His method of establishing the line does not meet the requirements of quality on which this court feels it could conscientiously adjudicate the differences between the parties now before us.
We believe the survey of 1905, made at the time the property was partitioned by the *546 heirs of George P. McMichael delineated the boundary between the properties involved in this litigation and that the boundary in dispute should be fixed in accordance with said survey if same is available and'the results thereof determinable. From the record as presently constituted, we are unable to say with certainty that the line designated by Webb as the boundary coincides with that fixed in the 1905 survey. Neither can we say with any assurance of accuracy that the break in the headright forms a common corner between the property of these litigants. A copy of the 1905 survey or access to the surveyor’s notes should shed some light on the matter. It is shown that Frank M. Edwards, whom defendants contend made the 1905 survey, is alive and available to testify and his testimony should be adduced. In the event the 1905 survey is not available the boundary between the properties involved must be established in keeping with the recitations in the deeds of the respective litigants viewed in the light of the attending circumstances including proper regard and consideration for natural, monuments, artificial monuments, distances, courses and quantity.
We believe the facts of this case are similar to those involved in Smith v. Almond, 157 La. 265, 102 So. 330, in which it was held that where no acceptable boundary is established by either party litigant, the matter will be remanded to the lower court and a new survey ordered.
For the reasons herein assigned, the judgment of the lower court, fixing the boundary between the property of plaintiffs John F. McMichael,, Clayton C. McMichael and Ruth McMichael Chrestman and defendant Philip McMichael, according to that certain survey made by Clifton G. Webb, Civil Engineer, of date February 20, 1957, awarding plaintiffs damages against defendants Philip McMichael, Roy Williams, Robert Rodriguez and Clinton Hughes, in solido, in the sum of $500, and permanently enjoining said defendants from entering the property in dispute, is annulled, set aside and reversed and this matter remanded to the trial court for establishment of a boundary between the properties of these litigants by a qualified surveyor appointed by the trial court, said boundary to be fixed in accordance with the 1905 survey of said properties, if possible, otherwise in accordance with the deeds of the respective parties and other available data and evidence, in either event the plat of said boundary survey to indicate the location of all monuments or markers thereon and the proximity thereto of all houses, buildings, structures and fences which have aided, assisted or in any way influenced the determination of said boundary. The costs of this appeal shall be divided equally between plaintiff and defendant, the costs of the lower court to await the final outcome of this litigation.
Reversed and remanded.
ELLIS, J., recused.