BARNETTE, Judge.
This litigation involves a boundary dispute between owners of contiguous estates. They acquired titles respectively which had derived from the same prior owner. The plaintiffs’ title is to all the “swampland” in a certain described portion of a section being 35 acres more or less and the defendant’s deed conveys to him all the “highland” in the same described portion of section, being 15 acres more or less.
This suit was filed by plaintiffs as a boundary action to have the line separating the two estates judicially determined and for an accounting of revenues received by defendant from that portion of the disputed land upon which they allege defendant has wrongfully erected certain improvements.
A judgment was rendered by the trial court in favor of plaintiffs recognizing the two foot elevation contour line as the boundary. The judgment further ordered the court appointed surveyor to physically mark that line across the property and make due return thereof. The defendant was allowed 30 days after homologation of the surveyor’s proces verbal to account for all revenues received from that portion of the land below the determined two foot contour line. The judgment made no reference to the exceptions of no right of action and of prescription which defendant had pleaded.
The defendant has appealed.
The original plaintiffs were Henry Al-cus, Jr. and twelve other named co-owners. Later the Alcus Lands Partnership Trust was created and the interests of plaintiffs in this and other property were transferred to the Trust. By motion and order the Al-cus Lands Partnership Trust was substituted as party plaintiff. Throughout this opinion the plaintiffs will be referred to simply as “Alcus”.
There is no dispute between Alcus and Elliser relative to their respective deeds of acquisition of the. properties claimed but there is issue between them as to the location of the boundary separating the two properties described.
The plaintiff, Alcus, owns:
Thirty-five (35) acres of swampland situated in the East Half of the Southwest Quarter of the Southwest Quarter (E/2 of SW 54 of SW 54) °f Section Fourteen, Township Nine South, Range Four East. (Emphasis added.) -
The defendant, Elliser, owns, by virtue of a deed executed June 10, 1941, the following described property:
Fifteen (15) acres, more or less of highland, situated in the East Half of Southwest Quarter of Southwest Quarter (E/2 of SW '54 of SW '54) of Section 14, Township 9 South, Range 4 East, containing all the highland in said East Half of Southwest Quarter of Southwest Quarter (E/2 of SW 54 °f SW 54) of Section 14, Township 9 South, Range 4 East.
A strip of land 15 feet wide on West side of Northeast Quarter of Southwest Quarter (NE 54 °f SW 54) of Section 14, Township 9 South, Range 4 East, running North to gravel highway. (Emphasis added.)
The above descriptions are confusing and partially incorrect in that they aggregate 50 acrés more or less, “situated in” the East half of the Southwest Quarter of the Southwest Quarter (E/2 of SW 54 of SW 54)- This described fractional section contains at most only 20 acres. All of the 15 acres, more or less, of highland described in the Elliser deed lies wholly within this 20 acres. Most of the Alcus land lies to the west of this 20 acres and only 5 acres at most lies in the area described. It is within this approximate five acres that the disputed boundary lies. The maps filed in evidence indicate this to be in the extreme southern portion of the above described 20 acres. The Amite River Diversion Canal constructed in 1959 cuts off the southwest corner of the 20 acres described *666 thus reducing the disputed area to something less than five acres.
This action was brought properly under almost identical articles of the Civil Code and the Code of Civil Procedure. The pertinent articles are as follows:
LSA-C.C. Art. 823
“When two estates or lands contiguous, in cities or in the country, have never been separated, or have never had their boundaries determined, or if the hounds, which have been formerly fixed, are no longer to be seen, each of the owners of the contiguous estates has a right to compel the other to fix the limits of their respective properties.”
LSA-C.C.P. Art. 3691
“If two contiguous lands have never been separated, or have never had their boundaries determined, or if the bounds which have been formerly fixed are no longer to be seen, or were wrongly placed, the owner of one of the contiguous lands may bring an action against the other to compel the fixing of the boundary.”
Alcus employed Alex Theriot, Jr., a Civil Engineer, in 1967 to make a survey of the land in question to locate and determine the property line between the Alcus property and that owned by Elliser within the twenty acres above described. The result of his survey, which fixed the boundary along the two foot contour line, is. shown by Exhibit P-2 filed in evidence. It is dated December 20, 1967. This suit was filed August 19, 1971. On August 23, 1971, an order was signed appointing Mr. Theriot to “ * * * inspect the property described in the foregoing petition, to survey the same and report thereon, in writing, to the Court, according to law.”
Pursuant to that order, Mr. Theriot: “Revised [his December 20, 1967 survey made for Alcus] to show gravel lane, sheds, frame camps and trailers existing as of August 10, 1973.”
It is significant, we think, that the survey which actually fixed the boundary along the two foot contour was made in 1967, not pursuant to the court order, but for a private client, now the plaintiff in this case. No boundary survey was made after the Court appointment. Mr. Theriot merely updated the survey made for Alcus by indicating improvements which had been made on the property after December 1967.
During the course of the trial below (January 14, 1974) more than two years after the appointment of Mr. Theriot as the Court surveyor, counsel for defendant, Elliser, objected to Theriot’s appointment on the basis that the survey which he had made fixing the boundary was not done pursuant to the Court’s appointment, but on behalf of the plaintiff and that he could not therefore be an impartial surveyor. The following exchange recorded in the transcript of testimony is pertinent:
“BY THE COURT:
Did you make any objection to this appointment at the time he was appointed?
BY MR. MATHENY:
Yes sir. There was a hearing and he was asked to bring this up to date. I have never accepted him as the court appointed surveyor, I’m perfectly willing to accept him as the plaintiff’s surveyor. I am not trying to cast any aspersions on his ability and his integrity or anything like that, or the accuracy of his survey. I just do not think under the circumstances he qualifies as court appointed surveyor. That maybe a technical objection, but I feel constrained to make it.
BY MR. CAVANAUGH:
Well Mr. Matheny forgive me but I don’t recall there ever being any objection made to Mr. Theriot being designated as the court’s expert.
*667 BY THE COURT: '
I am not aware of it either.
BY MR. MATHENY:
If it isn’t in the record I want to make it in the record now. Of course any court appointed expert must be sustained by the evidence he presents when he presents in court. He has admitted that he made this on behalf of the plaintiff prior to his appointment.
BY THE COURT:
O. What part of the survey did you make prior to your appointment Mr. Theriot?
A. I ran the boundary line of the twenty acre tract where it was possible to do so . . . the diversion canal cut off a portion of it, and I plotted the cross sections based on the State Public Works Department information. So basically the note depicts fairly clearly that the elevation of two was done in 1967, which I truthfully believe gave Mr. Elliser the benefit of this elevation.
BY MR. MATHENY:
Actually what you’ve done since the appointment Mr. Theriot has been to run the survey up to date as to the improvements, is that not correct ?
A. Well, once I was appointed by the court I restudied in essence my survey, to see if I would draw the same conclusions again since it had come to court. At the time I made the survey I had- no idea that it would come to trial and I then restudied my conclusions of the ’67 survey, re-talked to people that I felt could shed light on what I considered to be a judgment decision as far as property lines are concerned, and I reconfirmed what I considered to be a sound decision of 1967.
Q. Your note indicates that the change that you made subsequent to your appointment, on that document, was to bring it up to date as to improvements, right ?
A. Right, this is when we met and you requested this . . six or eight months ago . . to show the improvements . . the roads and buildings that were not shown.”
The objections to Mr. Theriot’s appointment based on his possible conflict of interests as the expert employed by the plaintiff, appears to have substantial merit. This does not imply any reflection on Mr. Theriot’s integrity or professional competence. But irrespective of the merit or timeliness of the objection, his survey could not be accepted as the basis of the Court’s judgment for the reason that it was not made in accordance with the strict requirements of law, particularly the following :
LSA-C.C. Art. 833
“Whether the limits be fixed judicially or extra judicially, it must be done by a land surveyor or civil engineer licensed to practice land surveying in this State, who if the limits be fixed judicially, shall be bound to make a proces verbal of his work which shall be signed in the presence of two competent witnesses; provided, however, that any written agreement, heretofore or hereafter made, which designates or delimits all or a part of the boundary between two or more estates is binding upon all parties thereto who are sui juris, their heirs, successors and assigns, to the same extent as any other written agreement affecting immovable property. (Amended by Acts 1968, No. 156 § 1.)”
LSA-C.C.P. Art. 3692
“The court shall appoint a surveyor to inspect the lands in question and to make plans showing the respective contentions of the parties.”
*668 LSA-C.C. Art. 834
“Whenever any surveyor is called on to fix the limits between adjacent estates, it is his duty to notify, in writing, the owners interested therein to be present at the work, if they think proper, and to inform them of the day and hour when he will proceed to fix the limits; and he is bound to make mention in his proces verbal of the notice he may thus have given, of the names of the parties notified, and of the date of notice; and the surveyor shall make a record of his proceeding, and of the plans drawn by him, in order that copies may be delivered to the parties who may require them.” (Emphasis in the original.)
LSA-C.C. Art. 835
“If the parties thus notified, their representatives or attorneys in fact, appear at the fixing the limits, the surveyor appointed for the purpose is bound to demand of them their respective title papers, which they are bound to deliver to him in good faith, if they have them in their possession, in order that the surveyor may determine, by examining them, in what place to fix the boundaries.
If the parties thus notified, or their representatives or attorneys in fact, refuse to deliver their title papers, the surveyor shall make mention of their refusal in his proces verbal, and of the causes they have alleged, if they have assigned any, for their refusal.” (Emphasis in the original.)
LSA-C.C. Art. 841
“It is the duty of the judge who has cognizance of suits on the subject of limits, to appoint surveyors to inspect the premises in question, and the court, on their report, ought to decide according to the titles of the parties, and the plans which shall be presented to the court.”
Mr. Theriot was not sworn, except as a witness when called to testify. He did not make a proces verbal of his work in the presence of two witnesses called for that purpose. There was no notice in writing to the respective owners, Mr. Elliser in particular, to give him an opportunity to be present or represented at the making of the survey. Mr. Elliser was not informed of the date and hour when he would proceed to fix the limits, in fact, as stated above, the boundary limits were actually fixed by Mr. Theriot more than three years before this suit was filed.
His testimony at the trial of the case was in large measure an attempt to justify his predetermined location of the boundary. It is significant also that his selection of the two foot contour was made not from an inspection of the property, but after consultation with professors at L. S. U. and other people in his line of work having knowledge of the lower elevation of land. After selecting the two foot contour he computed the acreage and found it to be 15.3 acres in the portion described in the Elliser deed. This further convinced him of the accuracy of the boundary selected.
The judgment of the trial court now before us on this appeal, after judicially recognizing the boundary to be the two foot contour then orders the surveyor to survey and mark that line on the ground and then file his proces verbal for homologation “ * * * Pursuant to Civil Code Articles 833 et seq.”
This we think puts the cart before the horse. It is the purpose of the survey conducted according to the strict requirements of the above articles, to provide the Court with impartial guidance to assist it in reaching a judicial determination of the boundary between the two estates, O.C. Art. 841. Here the Court made that judicial determination primarily upon the result of a private expert’s survey and then ordered the surveyor to stake out that line and thereafter file his proces verbal for homologation. This reverse order of procedure does not follow the requirements of law enacted for the exclusive purpose *669 of regulating boundary actions. There is no alternative than to remand for further proceedings in strict conformity with the regulatory articles of the Civil Code and Code of Civil Procedure. Lindsay v. Wright, 27 La.Ann. 565 (1875); Simmons v. Dixon, 174 So.2d 138 (La.App. 1st Cir. 1965); Talbot v. Pittman, 114 So.2d 117 (La.App. 1st Cir. 1959); Randazzo v. Lucas, 92 So.2d 398 (La.App. Orleans 1957); Naylor v. Pope, 68 So.2d 684 (La.App.2d Cir. 1953); Conrad V. Roussell, 37 So.2d 449 (La.App. Orleans 1948); Sharpless v. Adkins, 16 So.2d 556 (La.App.2d Cir. 1943).
Our opinion should not be interpreted to mean that the two foot contour may not ultimately be found to be the boundary between the two estates. It may be, but its location should be made from evidence to be determined from an examination of the land with the purpose of drawing a line of demarcation between the “highland” and the “swampland” without regard to a specific or predetermined contour.
The construction of the Amite River Diversion Canal, depositing a large amount of spoil from the excavation, has materially altered and obscured natural land marks. This will make the surveyor’s task very difficult in his search for physical evidence existing before the construction. Man made as well as natural markings have evidentiary value for certainly no better guide could be found than the line of demarcation which the adjoining landowners themselves accepted and established as evidenced by the limits of their possession long before the canal was constructed.
We are of the opinion that the appointment of Mr. Theriot as the Court Survey- or was improper in view of his predetermined boundary under employment by the plaintiff. It is not necessary to discuss the timeliness of the objection to his appointment since the procedural requirements of the Codal Articles, supra, were not followed. We will remand for the appointment of another surveyor and further proceedings.
The exceptions of no right of action and prescription based on Mr. Elliser’s alleged possession are referred to the merits for trial on remand. The issue raised by these exceptions cannot be resolved until the boundary between the “highland” and the “swampland” has been determined. The question of possession addresses itself to counsel to whom is reserved the right to introduce further evidence as may be deemed appropriate when the new survey has been completed.
The judgment appealed is annulled and the case is remanded to the trial court for further proceedings and trial in keeping with the views herein expressed, without prejudice to the rights of either party.
The plaintiff, appellee is cast for the cost of this appeal, all other costs to be assessed by the trial court on remand consistent with the judgment rendered.
Annulled and remanded.