W.C. FALKENHEINER, Judge Pro Tem.
This is a boundary action (LSA-CCP Art. 3691-3693: LSA-CC Arts. 781-796) in which the defendant appeals from the judgment of the Trial Court establishing the boundary between his property and that of plaintiffs in accordance with a survey of plaintiffs’ expert. (Exhibit P-8.) The judgment appealed from also ordered defendants to remove a cattle gap, a fence and a levee within sixty days and pay all costs, including all costs of the survey made by plaintiffs’ expert, Smith. Defendant seeks to have the case remanded for retrial and that the Trial Court be ordered to appoint its own surveyor.
FACTS
Plaintiffs owned three tracts of land in indivisión, all of which, by title, are located in Section 6, Township 2 South, Range 2 East, Evangeline Parish. Defendant owns one tract of land, contiguous to, and easterly of, plaintiffs’ land. All of defendant’s land, by title, is located in Section 5, Township 2 South, Range 2 East, Evangeline Parish.
The record in this case consists of the testimony of two land surveyors, one produced by each side, thirteen plaintiffs’ exhibits, seven defendant’s exhibits, a stipulation that the lands in question are contiguous, and acknowledgement that the boundary between their properties had never been established judicially, by agreement, or other than by the establishment of the section line in the original government survey.[1]
*267 The exhibits of the parties consist of copies of documents from the conveyance records of Evangeline Parish, plats of various surveys, and cost statements.
OPINION
For reasons set out hereafter, we affirm the decision of the Trial Court in establishing the boundary described by Surveyor Smith in plaintiffs’ Exhibit P-8, although it does not comply with Louisiana law dealing with boundaries (LSA-CC Art. 784, et seq.) Of particular application in this case are Civil Code Articles 793 and 794 which set forth three methods for determining boundaries, to-wit:
(1) By title when the parties rely on titles only. (CC Art. 793)
(2) The limits established by acquisitive prescription rather than title, when it is proved. (CC Art. 794)
(3) Uninterrupted possession for thirty years within visible bounds. (CC Art. 794)
The Trial Court correctly concluded that no boundary had been fixed here judicially or extra-judicially by any agreement of the parties. There was no proof of possession by either party sufficient to apply the rules of acquisitive prescription.[2] Likewise there was not proof of uninterrupted possession for thirty years within visible bounds.[3]
The Trial Court was therefore left with only one way to establish this boundary and that was by titles of the parties. The Court was faced with a similar situation in the case of Deshotel v. Lachney, 465 So.2d 974 (La.App.3d Cir.1985) at page 980, wherein it stated:
“Since we determine that neither party has acquired the right to a fixing of boundary according to limits established by possession, it necessarily follows that the boundary in question must be fixed according to the ownership of the parties as reflected by the titles. La. CC Art. 792 and 793.”
There is no conflict on this point since all agree that the titles of the parties require that the boundary be the section line between Sections 5 and 6 of Township 2 South, Range 2 East.
Mr. Smith and plaintiffs’ counsel consistently maintained that when Smith made the 1982 survey and prepared Exhibit P-8, he did not attempt to re-establish the section line of the original government survey, but that his sole purpose was to “establish the boundary”. The surveyor’s duty in such situations has been described as follows:
“In establishing a disputed boundary along a section line, it is the surveyor’s duty to reproduce the lines of the original government survey as originally run, as closely and accurately as possible. Smith v. Almond, 157 La. 265, 102 So. 330 (1924); Bodcaw Company v. Spurlin, 341 So.2d 1266 (La.App.2d Cir.1977), writ refused 344 So.2d 381 (La.1977). If an established corner or monument can be found within the township, then that corner should be used as a starting point. Fournet Land Co. v. Martin Fish Co., 184 La. 537, 166 So. 666 (1936). See also LSA-R.S. 50:125 and 50:154.”
Horneman, et al v. Giles, 381 So.2d 892 at 893 (La.App.2d Cir.1980), writ denied 385 So.2d 268 (La.1980).
The method by which Mr. Smith chose to “establish the boundary” was to start at the established southeast corner of Section 6. Thus he was correct in his procedure at *268 this point. From that corner he correctly proceeded on a course of 5° north 30" west, the course called for the section line on the government township plat (Exhibit D-l). He continued that course through the Dossman property.[4] He then proceeded on a course of 5° north 42" 15' west to the northeast corner of the Fontenot property which is also the southeast corner of plaintiffs' property and the beginning of the boundary at issue in this case.
From this point he deviated further and took a course of 6° north 4" 44' west for his opinion as to the location of the subject boundary.
Mr. Smith explained that he did not continue to use the 5° north 30" west course as it would cause the boundary to be located further east and into defendant’s property. He further stated that the boundary had to be a straight line and that he felt obligated to run it through certain irons and a railroad steel already in place thus causing the deviation, first to 5° north 44" 15' west and then to 6° north 4" 44' west.
The fixing of a boundary is a judicial question to be decided by the Court on the basis of the facts furnished to it and by applying the appropriate law. The Trial Court in this case simply accepted the opinion of Mr. Smith as to where the boundary was to be located without having the proper factual basis. The Court in Alcus v. Elliser, 310 So.2d 663 (La.App. 1st Cir. 1975), was faced with a comparable situation. The Court in that case was applying the boundary articles of the Civil Code prior to the 1977 revision, but the principle enunciated at pages 668 and 669 remains valid:
“This we think puts the cart before the horse. It is the purpose of the survey conducted according to the strict requirements of the above articles, to provide the Court with impartial guidance to assist it in reaching a judicial determination of the boundary between the two estates, C.C. Art. 841. Here the Court made that judicial determination primarily upon the result of a private expert’s survey and then ordered the surveyor to stake out that line and thereafter file his process verbal for homologation. This reverse order of procedure does not follow the requirements of law enacted for the exclusive purpose of regulating boundary actions. There is no alternative than to remand for further proceedings in strict conformity with the regulatory articles of the Civil Code and Code of Civil Procedure.” (Citations omitted).
The Trial Court was therefore in error, but we do not reverse the judgment which locates the boundary in accordance with the Smith survey (Exhibit P-8), nor do we remand as in Alcus, Supra. Plaintiffs did prove that the boundary of the properties is the section line between Sections 5 and 6, and neither party was able to prove either of the prescriptive boundaries. Plaintiffs also proved that the boundary according to the respective titles is on a bearing line running 5° north 30" west from the southeast corner of Section 6 which was also properly proved and identified by this record.
Plaintiffs simply failed to locate the boundary line on the ground except to point out that it would be further east and encompass property claimed by the defendant. Plaintiffs expressly acknowledged their satisfaction with the line proposed by them and Smith on the 6° north 4" 44' west course from the Fontenot corner, and further indicated that they wished to claim no land east of that line.
A remand for another survey would be pointless as we accept the technical finding of Mr. Smith, but only reject his attempting to make the judicial determination of establishing the boundary without a basis in *269 fact, which in this case, since he did not use the line established by titles, required proof of the acquisition of prescriptive rights.
REMOVAL OF THE FENCE, CATTLE GAP AND LEVEE
Plaintiffs’ one witness did testify that there was a fence, ditch and rice levee located west of his established boundary, and he placed them on his survey plats. There is no specific testimony about the cattle gap, although it is also shown on several of the plats. There is, however, no testimony that those works were built or placed there by defendant.
Defendant did allege in his answer that the fence was the boundary, and that the ditch and levee were east of the fence and on his property. Defendant’s witness had been a Department of Public Works employee and was familiar with its surveys, including a survey in 1968 for the ditch which did not show the fence. The inference here is that the ditch was constructed by the Department of Public Works and that the fence was built some time later. Since the fence was claimed by defendant as the boundary, the inference can be made that it was his.
Accordingly, we affirm the Trial Court in ordering the removal of the fence but reverse as to removal of the cattle gap and levee.
The judgment of the Trial Court is therefore affirmed insofar as it established the boundary line as indicated on plaintiffs’ Exhibit P-8 (Smith survey of 1982), and insofar as it orders defendant to remove the fence shown on that survey within sixty days.
The Trial Court’s judgment is reversed insofar as it ordered defendant to remove the cattle gap and levee.
All costs, including costs of this appeal, are to be assessed equally. See Phillips v. Parker, 469 So.2d 1102, (La.App.2d Cir. 1985), writ granted 475 So.2d 347 (La.1985); Deshotel v. Lachney, 465 So.2d 974 (La. App.3d Cir.1985).
AFFIRMED IN PART; REVERSED IN PART.

. The Trial Court indicated in written reasons that the parties had stipulated that the boundary between the properties had never been established. However the record (transcript pages 39-40) indicates that when plaintiffs’ counsel attempted to enter the stipulation, defendant's counsel did not specifically agree to it, indicating that he could not agree because there was a section line dividing the property. It is not necessary that this Court decide whether or not the stipulation was formally entered in view of *267 the express and tacit acknowledgements of the parties elsewhere in the record.

. The only testimony in the case comes from the two surveyors, neither of whom testified specifically about adverse possession. There is evidence of the presence of the fence and ditch which plaintiffs complain of, but they were not present in 1968 when a survey was made by the Louisiana Department of Public Works for the ditch.

. Mr. Smith, who has a long history of surveying in this area, and whose credentials and expertise were properly recognized by the Trial Court, did testify as to the existence of several iron pipes marking corners and a railroad steel which he believed to be located on the section line. It cannot be determined from this record how long these objects had been in place and no facts are present which would enable the fact-finder to determine if they constituted "visible bounds”.

. Mr. Smith had made an earlier survey of the Dossman property (Exhibit D-2) in which he verified and used the southeast corner of Section 6 and the course of 5° north 30" west for the section line which also formed the easterly boundary of the Dossman property. The southeast corner of Section 6 had also been previously established by earlier Goudeau and Hollier surveys.