## UNITED STATES *v.* STATE INVESTMENT COMPANY ET AL.

APPEAL FROM THE CIRCUIT COURT OF APPEALS FOR THE EIGHTH CIRCUIT.

No. 195.  Argued January 25, 1924.—Decided February 18, 1924.

1. The questions where the line run by a survey lies upon the ground, and whether a particular tract lies on one side of it or the other, are questions of fact, upon which this Court will accept the concurrent findings of the District Court and Circuit Court of Appeals, unless clear error is shown.  P. 211.
2. The general rule is that, in matters of boundary, calls for natural objects and fixed monuments control those for distances; and calls for courses prevail over those for distances.  *Id.*
3. After a tract of land has been surveyed and patented by the United States, its boundary cannot be affected, to the prejudice of the owner, by surveys and rulings of the Land Department.  P. 212.

285 Fed. 128, affirmed.

---

APPEAL from a decree of the Circuit Court of Appeals affirming a decree of the District Court for the defendants in a suit by the United States to quiet title to land.

*Mr. S. W. Williams,* Special Assistant to the Attorney General, with whom *Mr. Solicitor General Beck* was on the brief, for the United States.

The court erred in refusing to admit in evidence the plats and field notes showing the closing of the public land surveys on the west boundary of the grant and also in refusing to admit the decisions of the Land Department, holding that the west boundary of the grant was along the line run by surveyor Compton.

The power to make and correct surveys of public lands belongs to the political department of the Government and not to the judicial. *Cragin* v. *Powell,* 128 U. S. 691; *Kirwan* v. *Murphy,* 189 U. S. 35. Therefore, the survey of 1882 was admissible on the trial of this cause in 1918 as an archive of the General Land Office, if upon no other ground. *Ayers* v. *Watson,* 137 U. S. 584.

It is stipulated that the Walker survey was not approved by the Interior Department. His location of the Means line was never adopted by the Department, but the latter accepted the Compton survey as the west boundary of the grant. The plaintiff was clearly entitled to show what the Secretary of the Interior had decided on this question.

The Walker line must be rejected because it was not accepted or approved by the Land Department and because the stones found by Walker do not answer either the calls of the patent or the calls of the grant.

Means' survey was so erroneous as to be fraudulent; indeed, it was no survey at all and is not binding upon the Government. It follows therefore, that if the court is not satisfied with the Compton survey it should order a new survey by the Land Department.

The line run by the deputy surveyors in 1882 has been regarded as the west boundary of the grant from the time it was run until the question was agitated by the grant claimants about the year 1907, a period of some 25 years. During all that time the land here involved was regarded as public land of the United States and administered accordingly. When the question was raised by the grant claimants, the Interior Department adhered to this line and refused to change it.

It was held in *Iowa* v. *Carr*, 191 Fed. 257, that possession was *prima facie* evidence of title to real estate. Where the lands of respective owners adjoin, and for many years one, with the silent acquiescence of the other, has had possession and occupation to a certain line between them claiming title, these facts constitute strong evidence of the correctness of the line, and that line should be taken as the correct line in the absence of persuasive countervailing evidence. See also *United States* v. *Stone*, 2 Wall. 525, 537; *Virginia* v. *Tennessee*, 148 U. S. 503.

The grant claimants have no equities to be considered. They have never been in possession of the land in controversy; and for 25 years after the public land surveys were closed upon the west boundary in 1882 they set up no claim to it. They have received an area enormously larger than that granted by the Mexican authorities, and have no cause to complain. The boundary was fixed by the public land survey of 1882 and should not be disturbed.

*Mr. A. T. Rogers, Jr.,* with whom *Mr. Herbert W. Clark* and *Mr. Chas. W. G. Ward* were on the brief, for appellees.

MR. JUSTICE SANFORD delivered the opinion of the Court.

This is a suit in equity brought by the United States in the Federal District Court for New Mexico to quiet title

to a large strip of land claimed as part of the public lands. The defendants claim title under the " Mora Grant ", which was segregated from the public domain by a patent issued in 1876. The United States does not challenge the validity of the grant, and admits that the west boundary of the grant is the east line of the public lands. The sole question is whether the strip of land in dispute lies within the limits of the grant.[1] This depends entirely upon the location of the west boundary of the grant.

The Mora Grant was originally a community grant made by the Republic of Mexico in 1835. The west boundary was described as " the Estillero." After the cession to the United States by the treaty of Guadalupe Hidalgo, the claim under this grant was confirmed by Congress by the Act of June 21, 1860, c. 167, 12 Stat. 71. The grant was surveyed, in 1861, by Thomas Means, a Deputy United States Surveyor, under instructions of the United States Surveyor General for New Mexico. The patent, after setting forth the descriptive notes of Means' survey, authenticated by the Surveyor General, granted to the patentees " the tract of land embraced and described in the foregoing survey," covering an area of more than 800,000 acres.[2]

The survey describes the west boundary as a line more than thirty-three miles long, running south from the northwest corner, a point " inaccessible in the mountain and not set ": passing successively, at given distances, a large stone marked W.B.M.G. and EO., with given bearings to aspen and pine trees marked W.B.M.G., and Estillero and a stone marked W.B.M.G.; a trail to Picuris; the Pueblo river; and a large stone at the foot of a high mountain, marked W.B.M.G.; and ending at a large stone on the bank of the Sapello river, marked S.W.C.M.G.

---

[1] The parties stipulated at the hearing that title to the land in dispute is either in the United States or in the defendants.

[2] With certain exceptions and reservations which are not here material.

The defendants contend that the west boundary as surveyed by Means is a north and south line passing through "the Estillero", and now established by stones marked by Means and by the natural objects called for in the survey. The Government contends that it is located more than three miles farther east, as established by a survey made for the Government by one Compton in 1909.

The District Judge, in an opinion reviewing the evidence, found that "the Estillero," at which Means was instructed to establish the west boundary of the grant, is a place in the valley of the Pueblo river; that no monuments were found on or near the so-called Compton line; and that the west boundary "being established from the evidence on the ground, that is, natural objects—the Estillero, the trail to Picuris, and Pueblo River, and the permanent monuments, stone marked EO on one side and W.B.M.G. on the other, stone marked W.B.M.G. and stone south of the Pueblo River marked W.B.M.G., all now being located in the relative positions called for in the patent, these calls for natural objects and permanent monuments on the ground definitely located" must control. He therefore concluded that the west boundary of the grant is a north and south line drawn through the monuments set by Means in 1861 at the Estillero on the Pueblo river and now in place on the ground; and that the United States by the patent had conveyed the land lying east of this line and has no title thereto. A decree was accordingly entered in favor of the defendants; quieting their title to the land in dispute against any adverse claim of the United States.[3]

On an appeal taken by the United States, the Circuit Court of Appeals, again reviewing the evidence, concurred in the finding of the District Court as to the location of the Estillero; found that the so-called Compton line ran about three miles east of the monuments at the

---

[3] This relief was prayed in the defendants' answer.

Estillero, did not cross the Pueblo river, and was "without support;" and held that the west boundary of the grant is "the north and south line through Means' monuments at the Estillero," as had been found by the District Court. The decree of that court was accordingly affirmed. 285 Fed. 128.

1. The questions where the line run by a survey lies on the ground, and whether any particular tract is on one side or the other of that line, are questions of fact. *Russell* v. *Land Grant Co.,* 158 U. S. 253, 259. In the present case both the District Court and the Circuit Court of Appeals have found, from the evidence, that the west line of Means' survey lies upon the ground in the location claimed by the defendants, and that the land in dispute is east of that line and within the boundary of the grant. Under the well settled rule these concurrent findings on questions of fact will be accepted by this Court unless clear error is shown. *Wright-Blodgett Co.* v. *United States,* 236 U. S. 397, 402; *Bodkin* v. *Edwards,* 255 U. S. 221, 223; *Brewer Oil Co.* v. *United States,* 260 U. S. 77, 86. An examination of the evidence—which need not be recited here—discloses no such error; and, on the contrary, leads us to the conclusion that the findings of the lower courts are in accordance with the greater weight of the testimony.

2. These findings, although extending the lines of the grant farther west and south than the distances called for in the survey, do not involve any erroneous application of the law. The west line of the grant was correctly located by reference to the Estillero, the marked stones and the natural objects called for. The general rule is that in matters of boundaries calls for natural objects and fixed monuments control those for distances. *Newsom* v. *Pryor,* 7 Wheat. 7, 9; *Higueras* v. *United States,* 5 Wall. 827, 835; *Security Land Co.* v. *Burns,* 193 U. S. 167, 179; *Silver King Co.* v. *Conkling Co.,* 255 U. S. 151, 161; *Wat-*

*kins* v. *King* (C. C. A.) 118 Fed. 524, 536; *United States* v. *Development Co.* (C. C. A.) 254 Fed. 656, 658. And calls for courses likewise prevail over those for distances. *Ewart* v. *Squire* (C. C. A.) 239 Fed. 34, 36. No ground appears here for any exception to these rules.

3. The District Court did not err in refusing to admit public land surveys made in 1882 as evidence showing the closing of such surveys on the west boundary of the grant, and decisions of the Land Department holding that its west boundary was along the line run by Compton. Although the power to correct surveys of the public land belongs to the political department of the Government and the Land Department has jurisdiction to decide as to such matters while the land is subject to its supervision and before it takes final action, *Cragin* v. *Powell,* 128 U. S. 691, 698; *Knight* v. *Land Association,* 142 U. S. 161, 177; *Kirwan* v. *Murphy,* 189 U. S. 35, 54, this power of supervision and correction by the Department is " subject to the necessary and decided limitation " that when it has once made and approved a governmental survey of public lands, and has disposed of them, the courts may protect the private rights acquired against interference by corrective surveys subsequently made by the Department. *Cragin* v. *Powell, supra,* p. 699. A resurvey by the United States after the issuance of a patent does not affect the rights of the patentee; the Government, after conveyance of the lands, having " no jurisdiction to intermeddle with them in the form of a second survey." *Kean* v. *Canal Co.,* 190 U. S. 452, 461. And although the United States, so long as it has not conveyed its land, may survey and resurvey what it owns, and establish and reëstablish boundaries, what it thus does is " for its own information " and " cannot affect the rights of owners on the other side of the line already existing." *Lane* v. *Darlington,* 249 U. S. 331, 333.

The decree of the Circuit Court of Appeals is

*Affirmed.*