## GALT et al. v. WILLINGHAM.

(Circuit Court of Appeals, Fifth Circuit. February 5, 1926.)

No. 4554.

1. Boundaries ⟨⟩10.

Mistake of government surveyor in call of field notes in noting minor points does not impeach integrity of survey as a whole.

2. Boundaries ⟨⟩10.

Under Rev. St. § 2396 (Comp. St. § 4804), footsteps of original surveyors should be followed in re-establishing lines of survey, and it is immaterial if lines actually run by him are incorrect.

3. Boundaries ⟨⟩3(3).

In re-establishing lines of a survey, courses and distances yield to natural monuments and boundaries.

Appeal from the District Court of the United States for the Southern District of Florida; Rhydon M. Call, Judge.

Suit by Arthur T. Galt and others against E. J. Willingham. From a judgment dismissing the bill (300 F. 761), plaintiffs appeal. Affirmed.

John P. Stokes, of Miami, Fla., for appellants.

W. H. Burwell, of Miami, Fla., and C. N. McCune, of Ft. Lauderdale, Fla., for appellee.

Before WALKER, BRYAN, and FOSTER, Circuit Judges.

BRYAN, Circuit Judge. This is a suit to settle the boundary line between adjoining lands. Appellants own the west ½ of the west ½ of fractional section 30, in township 49 south, of range 43 east. That section is made fractional by the Atlantic Ocean, which bounds it on the east. Appellee owns government lots 1 and 5 of the same section, which contain all the land remaining between the eastern boundary of appellants' land and the ocean.

Appellants filed their bill of complaint, claiming that a strip of land approximately 500 feet wide, extending north and south through the section, is on the west side of the division line, and appellee defended on the ground that the strip is on the east side. The District Court found for appellee on the evidence, and dismissed the bill.

Fractional section 30 is bounded on the west by the range line between ranges 42 and 43, and the division line in dispute is parallel to and 1,320 feet east of that range line. It therefore is apparent that the issue presented depends on the location of the range line along the western boundary of fractional section 30. It is agreed that the starting point of the government survey, which was made in 1870 by Deputy Surveyor Williams, was in Bonnet Slough, a well-defined waterway, at the southeast corner of section 36, range 42, and the southwest corner of section 31, range 43.

The field notes call for a north and south line, and, proceeding north from the starting point, for a strip of hammock at 4 chains, marsh at 15 chains, and the edge of the "river" at 80 chains, which is the southwest corner of section 30. The field notes of the second mile north call for New River Sound at 45 chains, for crossing it at 55 chains, and for a post in a boggy marsh at 80 chains, which is the northwest corner of section 30.

The meander lines of the left bank of New River Sound also call for the northeast corner of section 36, and locate the sound west of the range line in section 36 and in the southeast quarter of section 25, range 42. The government map, which was compiled from the field notes, shows lot 8 containing 19.30 acres in between the sound and the range line. The government survey of the north line of section 36 begins at the northwest corner and runs east. The field notes call for marsh at 14.50 chains, Middle river at 31.95 chains, scrub at 41 chains, savannah at 62.50 chains and New River Sound at 74 chains. It thus appears that, where the river was called for at the northeast corner of section 36, the surveyor had referred to New River Sound.

The government survey of the north line of section 31 of range 43, which is the same as the south line of section 30, also runs east. The field notes call for crossing marsh to hammock at 8 chains, Bonnet Slough at 14 chains, across Bonnet Slough at 16 chains, and the ocean beach at 25 chains. The field notes of the north line of section 25, range 42, begin at the northwest quarter and run east, call for natural monuments, including a savannah at 66 chains, marsh at 72 chains, and a section corner in marsh at 80.22 chains. The field notes of the government survey for

the north line of section 30, beginning at the northwest corner and running east, call for New River Sound at 8.2 chains, crossing marsh to hammock ridge at 23 chains, Bonnet Slough at 24.50 chains, palmetto and the ocean beach at 29.30 chains, with a notation that the map gives this distance as being 39.-30 chains. The east and west lines above mentioned were surveyed for appellee by engineers, who testified that they checked up the field notes of the government survey and found the measurements substantially correct. They fixed the distance from the northwest corner of section 30 to the ocean at 37 chains.

Surveyors employed by appellants surveyed a true north and south line from the starting point in Bonnet Slough to the north line of section 30. That line, they testified, is the true range line. It runs in Bonnet Slough for a greater distance than is called for by the government field notes, crosses the south line of section 30 at a point 496 feet east of the open waters of New River Sound, intersects a small creek or run about where the government field notes call for New River Sound, 45 chains north of the first section corner, and strikes the north line of section 30 on the west bank of the East Coast Canal, which it is shown by the testimony usually utilized the natural waterways, deepening channels through them. It is hardly to be doubted that the builders of the canal made the ordinary use of New River Sound. What the engineers employed by appellants referred to as a canal is designated by the government surveyor's field notes as New River Sound, for in running the north line of section 30 the original surveyor came to New River Sound 8.2 chains east from the northwest corner of the section.

The map relied on by appellants represents the southwest corner of section 30 as being on the eastern edge of a marsh, and the line from there to the ocean as only 1,194 feet, as against 1,650 feet called for by the government survey, and the north line shown on that map is at least 393 feet shorter than the line called for by the government survey. The difference in the measurements of lines is, of course, explained by the difference in the starting point, but the practical result would be that appellants' land would front on the ocean for a considerable distance, and some of appellee's land would be out in the ocean. Witnesses for both sides agree that New River Sound spreads out just north of the southwest corner of section 30. If that corner is at the point contended for by appellee, lot 8 shown on the government map would be almost, if not entirely, covered by the waters of the sound.

[1] It is also apparent from the evidence that the government surveyor was mistaken in the call of his field notes to cross New River Sound 45 chains north on his second mile. None of the engineers was able to so run the line as to leave any considerable acreage in lot 8, or to cross the sound as called for in the original survey. However, these mistakes do not impeach the integrity of the survey as a whole. A surveyor would naturally be more careful in establishing section corners than in noting minor points, especially in territory that was difficult to survey at best, where the primary object of the survey was to ascertain the acreage of lands which the government owned.

We think it is fairly well established by the evidence that the southwest corner of fractional section 30 was established on the edge of the open waters of New River Sound. That point is not only fixed by a natural boundary, but it also ties in and checks up with the section corners west and north of it, and with the ocean on the east. It is contended on behalf of appellants that it was proper to locate the southwest corner of section 30 as they did, because the government surveyor might have considered the marsh surrounding the sound, instead of the open waters, as the edge where he placed his corner post. We are of opinion that this contention is untenable for two reasons: In the first place, note was taken in the original survey of the marsh land, and it was distinguished from the sound proper; and, in the second place, the distance along the north and south boundary lines of section 30 would have been considerably less in the original survey than they are shown to have been.

It is also suggested that the ocean could have washed away the greater part of appellee's land, but that is hardly consistent with the fact that distances from the section corners are substantially the same to-day as they were when the original survey was made. [2, 3] The only thing on which appellants reasonably can rely is the failure of the government surveyor to run his range line due north and south. But in re-establishing the lines of a survey the footsteps of the original surveyor should be followed, and it is immaterial that the lines actually run by him are not correct. R. S. § 2396 (Comp. St. § 4804); Ayers v. Watson, 11 S. Ct. 201, 137 U. S. 584, 34 L. Ed. 803. Courses and distances yield to natural monuments and boundaries. This rule is so strict that even the government itself cannot question it.

United States v. State Investment Co., 44 S. Ct. 289, 264 U. S. 206, 68 L. Ed. 639.

The decree is affirmed.