241 F.2d 849
 KRUGER & BIRCH, Inc., Plaintiff,
v.
Gloria DU BOYCE, Defendant, and Emile E. Francis and Robert E. Francis, by his Guardian, Fernando Francis, Defendant-Intervenors.
Appeal of Gloria DU BOYCE.
 No. 12022.
 United States Court of Appeals Third Circuit.
 Argued at Charlotte Amalie January 30, 1957.
 Decided March 7, 1957.
 As Amended June 3, 1957.
 
 Gloria Du Boyce, appellant, pro se.
 Everett B. Birch, Charlotte Amalie, St. Thomas, V. I., for appellee.
 Before MARIS, WOODBURY and KALODNER, Circuit Judges.
 MARIS, Circuit Judge.
 
 
 1
 This is an appeal by the defendant Gloria Du Boyce from a judgment entered by the District Court of the Virgin Islands in favor of the plaintiff, Kruger and Birch, Inc., in a suit for the recovery of possession of land from the defendant and the removal of a fence erected thereon by her. The plaintiff corporation is the owner of Estate Frydendal, No. 4, in the East End Quarter of the island of St. Thomas and the defendant is the lessee for a term of 25 years of a small portion of Estate Smith Bay immediately to the south of and adjoining the plaintiff's land on Water Bay. Emile E. Francis and Robert E. Francis, sons and devisees of Duncan Francis, deceased, the present owners of the land held by the defendant as lessee, were permitted to intervene as additional parties defendant.
 
 
 2
 The case came on for trial in due course before the judge of the district court. The plaintiff and the intervening defendants were represented by counsel at the trial but the defendant, although urged by the trial judge to procure counsel, did not do so and appeared pro se. Her failure to procure counsel and her own complete lack of knowledge of judicial procedure greatly complicated the conduct of the trial. The plaintiff offered in evidence a survey of Estate Smith Bay made by R. J. Auld on October 16, 1937 and recorded in the Department of Public Works under No. C3-24-T37 which showed the exterior boundaries of that estate including that portion of the boundary line between that estate and Estate Frydendal which is involved in this case. The plaintiff also offered in evidence a survey of Estate Frydendal made by Nathaniel O. Wells on July 30, 1955 to which the Department of Public Works had given No. C9-9-T55 which also showed the boundary line between that estate and Estate Smith Bay which is involved in this case.
 
 
 3
 It appeared from the evidence that the 1937 Auld Survey, No. C3-24-T37, and two supplementary surveys made by Auld in 1938 of parts of Estate Smith Bay had been adjudged as correctly establishing the boundaries of that estate by a decree of the district court entered August 22, 1938 in an action for partition between the owners of the estate. Viggo A. Christensen et al. v. Mary A. Wesselhoft et al., civil action No. 8 of 1938. Duncan Francis, the defendant's lessor, and the father of and devisor to the intervening defendants, was a party to that action and was bound by the decree.
 
 
 4
 The disputed boundary line begins at a United States bound post set on the north side of the public road leading from Cassi Hill to Red Hook, passes over a bound post, No. 1358, set on the side of the Coki Point road, and continues, according to the Auld survey, in a straight line with a bearing North 88° 18' East to a mampoo tree by the shore of Water Bay at the ocean end of the Water Bay road, the distance from the United States bound post to the mampoo tree being 2117 feet, more or less. In view of the 1938 decree establishing the line as shown by the Auld survey the trial judge held that the question before him was primarily to determine the location of the Auld line on the ground. Since the location of the bound posts which fixed the western end of the line was undisputed the question narrowed down to the location of the mampoo tree near the sea which is called for by the Auld survey to fix the eastern end of the line.
 
 
 5
 The Wells survey, upon which the plaintiff relies, shows the tree to be a mampoo tree, under which a United States bound post has been set, which is at the foot of the Water Bay road. This bound post, according to Wells' testimony, is about 182 feet west of another bound post, No. 801, set near the shore of Water Bay. The defendants, on the other hand, asserted that the tree which defined the eastern end of the boundary line was another mampoo tree which is located near the shore about 230 feet to the northwest of the first mampoo tree and about 430 feet around the bay from bound post No. 801. The use of that mampoo tree as the boundary monument would give the defendant about 230 feet of sandy sea beach which would constitute the base of a triangular strip of land extending westward about 1600 feet and narrowing to a point at bound post No. 1358 on the Coki Point road. The eastern part of this triangular strip is the land in dispute in this case.
 
 
 6
 The uncontradicted evidence disclosed that in 1947 the Department of Public Works set a United States bound post under the mampoo tree now claimed by the plaintiff as the boundary tree, i. e., the tree at the foot of the Water Bay road which is about 182 feet from bound post No. 801. The Department set the bound post under that tree because it was regarded as the mampoo tree at the foot of the Water Bay road which was called for as the boundary monument by the Auld survey. The uncontradicted evidence also is that Duncan Francis, the defendant's lessor and the intervening defendants' devisor, and representatives of the owners of Estate Frydendal were present when the bound post was set and agreed that it was correctly located to mark the boundary line between Francis' land and Estate Frydendal. It was further testified without contradiction that in 1953 Francis told the defendant when she was negotiating with him for a lease that he could not lease to her the beach north of the Water Bay road because it did not belong to him.
 
 
 7
 The intervening defendants offered the testimony of one witness, Floyd George, the Public Surveyor, who identified two surveys which he had made, one dated April 1, 1955, No. D3-232-T55, showing the land leased to the defendant, and the other dated May 23, 1956, No. B3-170-T56, showing the area in dispute in this case. His survey No. D3-232-T55 showed the disputed line as running to the mampoo tree claimed by the defendants as the boundary monument. On cross-examination, however, George admitted that his surveys did not establish the boundary line in dispute but merely the disputed area and that he did not know which was the correct boundary line.
 
 
 8
 The intervening defendants thereupon withdrew their defense and agreed to the entry of a judgment declaring the boundary in question to be a straight line running from bound post No. 1358 on the Coki Point road to the bound post planted by the Department of Public Works in 1947 under the mampoo tree at the foot of the Water Bay road and thence to the sea. The defendant was then asked by the trial judge whether she had any evidence to put in and answered: "None whatsoever." A little later she was asked whether she wished to proceed further in the case and she replied, "I have nothing to say." The trial judge accordingly ended the trial and the court thereafter entered a judgment (a) adjudging the boundary between the parties to be as claimed by the plaintiff and agreed to by the intervening defendants, (b) directing the Department of Public Works to accept, file and record the Wells survey, No. C9-9-T55, which was held to be confirmatory of the Auld surveys, Nos. C3-24-T37 and B3-114-T38, and to remove from its files and cancel the George surveys, Nos. D3-232-T55 and B3-170-T56, (c) ordering the defendants to remove the fences erected by them on the lands adjudged to belong to the plaintiff, and (d) adjudging the Water Bay road to be a public road. The defendant then took the present appeal pro se.
 
 
 9
 In support of her appeal the defendant has filed a brief and has presented oral argument which have been so largely irrelevant and incoherent as to be of little real help to us in considering the questions which she is entitled to raise. We have accordingly taken special pains to examine the entire record with care in order to determine whether it discloses any action on the part of the trial judge of which the defendant may fairly complain and whether there was any error in the judgment which substantially affected her rights. Our study of the record, the brief and the various papers which the defendant has from time to time filed pro se under the guise of motions or applications of one kind or another indicates that of the questions which she raises only three are sufficiently based on the record to call for discussion.
 
 
 10
 The first relates to a discrepancy between the course or bearing of the disputed line as shown on the Auld survey and that shown on the Wells survey. The Auld survey calls for a bearing North 88° 18' East while the Wells survey gives the bearing as South 88° 59' East, a difference in direction of 2° 43' or, correcting the bearings for the difference between true north used by Auld and Lambert grid north used by Wells, of 3° 11½'. It thus appears that while both bearings are almost due east the Auld line bears about 3° to the north of the Wells line. Accordingly the Auld line projected on that bearing from bound post No. 1358 eastwardly to the sea would come out at the beach something like 100 feet northwest of the mampoo tree at the foot of the Water Bay road to which the Wells line runs. And since the Auld survey calls for that mampoo tree as a natural monument to which the line runs there is disclosed a conflict between Auld's bearing and the monument called for by his survey.
 
 
 11
 It is well settled that a call in a survey for a natural or permanent monument or object will prevail over a conflicting call for course and distance. United States v. State Investment Co., 1924, 264 U.S. 206, 211, 44 S.Ct. 289, 68 L.Ed. 639; 11 C.J.S., Boundaries, § 50(b). The reason for the rule is that natural monuments or objects afford greater certainty than computations of courses or distances and are less subject to error. Furthermore, the true intention of the parties will more probably be ascertained by adopting the call for natural monuments. The rule is particularly applicable where, as here, the natural monument has been accepted by the adjoining property owners and marked by the public authorities as the boundary monument called for by the survey.
 
 
 12
 In the present case, as we have seen, the uncontradicted evidence established that the Department of Public Works in 1947 marked the mampoo tree at the foot of the Water Bay road by setting a bound post under it in the presence of the defendant's lessor, Duncan Francis, who accepted it as a correct boundary monument and later told the defendant that he did not own the land beyond that point. Moreover, in this instance the conflict is as to the bearing of the line only. Auld's survey called for a distance from the United States bound post on the Cassi Hill road to the mampoo tree by the sea of 2117 feet more or less. Wells testified that he measured a straight line from that bound post to the mampoo tree at the foot of the Water Bay road and found its length to be 2117.3 feet, a variance of less than 4 inches. He further testified that the distance from that bound post to the mampoo tree claimed by the defendant as the boundary marker was only 1975 feet, a variance of 142 feet. We are satisfied that the trial judge was right in concluding that the marked and accepted mampoo tree located at the foot of the Water Bay road was the boundary monument called for by the Auld survey and that it must prevail over the bearing called for by that survey in determining the boundary line in dispute.
 
 
 13
 Another contention of the defendant which calls for brief discussion is based on the evidence which indicated the presence in the disputed strip of land of the remains of an old fence or fences running from the Coki Point road eastwardly in the general direction of the northernmost of the two mampoo trees as far as a pond and of another short section of ancient fence on the other side of the pond near that mampoo tree by the seashore. The defendant contends that the trial judge should have found from this evidence that the boundary line ran along this old fence line down to the mampoo tree claimed by her as the boundary monument. The difficulty with this contention is that since the fence in question undoubtedly antedated 1937 it must have been taken into consideration in making the Auld survey and in the approval of that survey by the court as establishing the boundary line of Estate Smith Bay. And since the defendant's lessor was bound by the approval of the Auld survey by the court his privy, the defendant, is estopped to attack it by seeking to show by means of ancient fences that the line was not where Auld indicated and the district court adjudicated it to be.
 
 
 14
 Even a stranger to a judgment establishing a boundary may rely on it by way of estoppel for his protection as against a party to the judgment when he has acted on the faith of its recitals to his injury. Medlin v. Wilkins, 1883, 60 Tex. 409; 50 C.J.S., Judgments, § 745. Here the plaintiff, although not a party or privy to the judgment establishing the boundary of Estate Smith Bay according to the Auld survey, did act on the faith of that judgment in buying the Frydendal Estate and did so to its injury if the Auld line is departed from in this case. For the plaintiff's purchase of the Frydendal Estate in 1955 was based upon the Wells survey which, as Wells testified and as the court properly found, used as the common boundary between Estate Frydendal and Estate Smith Bay the line of the Auld survey which the court in 1938 had adjudicated to constitute that boundary.
 
 
 15
 Nor do we think that the defendant may rely upon the evidence of the ancient fences to establish a claim by adverse possession on the part of her lessor and herself. For any such claim was certainly tolled in 1947 by Francis' acquiescence in the setting of the bound post under the mampoo tree at the foot of the Smith Bay road and her own claim can hardly be said to have begun until she erected the fence in controversy in 1954. It is thus clear that there has not been adverse possession of the disputed land for the period of the statute of limitations which in St. Thomas is 20 years. Code of Laws of the Municipality of St. Thomas and St. John, Title III, Chapter 2, Section 2.
 
 
 16
 The defendant's answer, brief and argument have raised many other issues, most of them irrelevant. We have considered them all, however, so far as they are relevant to this suit, and with one exception we find them to be wholly without merit and to require no discussion here. The one exception, the last of the three questions which we find it necessary to discuss, is the defendant's objection to paragraph 6 of the judgment of the district court which adjudges the Water Bay road to be a public road. We think that this objection is well taken and must be sustained. For the plaintiff did not ask for such relief in its complaint and there is no evidence in the record with regard to the character of the road which would support the adjudication. The Water Bay road may well be a public road. As to this we express no opinion for the question remains to be determined in a proper proceeding in accordance with the local law.
 
 
 17
 The judgment of the district court will be modified by striking paragraph 6 therefrom and as so modified will be affirmed. Each party will bear his own costs in this court.