650 So.2d 815 (1995)
TEXAS INTERNATIONAL PETROLEUM CORPORATION
v.
DELACROIX CORPORATION, et al.
No. 94-CA-1426.
Court of Appeal of Louisiana, Fourth Circuit.
January 31, 1995.
Writ Denied April 20, 1995.
*817 Wilkinson & Wilkinson, Hugh M. Wilkinson, Jr., John B. Wilkinson, New Orleans, for appellant.
Ogden, Ogden & Wright, Charlton B. Ogden, III, New Orleans, for appellees.
Before KLEES, BYRNES and CIACCIO, JJ.
BYRNES, Judge.
This is a concursus proceeding brought by Texas International Corporation seeking a determination of the ownership of oil and gas royalties deposited into the registry of the court attributable to disputed tracts of land within two conservation units designated as 7900' RA SU A and 7900' RA SU B, Half Moon Lake Field, St. Bernard Parish. Total Minatome Corporation succeeded Texas International Petroleum Corporation by act of assignment and was joined as a party plaintiff.
This phase of the litigation focuses on the dispute between Delacroix corporation and Delacroix Royalty Owners (referred to collectively as "Delacroix") the royalty owners of Section 13 and Biloxi Marsh Land Corporation and its royalty owners of Section 24 (referred to collectively as "Biloxi"). The primary issue concerns the location of the line between Sections 13 and 24, Township 15 South, Range 17 East, which is simultaneously the southern boundary of Section 13 and the northern boundary of Section 24. All other issues were held in abeyance pending resolution of this issue.
The trial court ruled in favor of Biloxi.[1] We affirm.
The ancestors in title to the land in dispute acquired title by reference to an official government survey done by Messrs. Richardson and Powell in 1842-1845. That survey was approved by the government in 1848. The parties agree upon the fundamental legal principle in this case: THIS COURT IS POWERLESS TO CORRECT ERRORS IN THE ORIGINAL GOVERNMENT SURVEY!
The power to make and correct surveys of public lands belongs to the political department of the government, and while the lands are subject to the supervision of the General Land Office, its decisions in such cases are unassailable by the courts, except by a direct proceeding. Cragin v. Powell, 128 U.S. 691, 9 S.Ct. 203, 32 L.Ed. 566 (1888). In other words, decisions of the General Land Office of the United States are not subject to correction by the courts in suits between individuals. Leader Realty Co. v. Lakeview Land Co., 142 La. 169, 76 So. 599 (La.1917). Whether a government survey as originally made is correct or incorrect is for the land department alone to determine, and as to which the courts have no jurisdiction except by original proceedings in equity. Carrere v. City of New Orleans, 162 La. 981, 111 So. 393 (La.1926). Even if the governmental *818 survey is incorrect, it nevertheless creates the township sections and boundaries. State v. Ward, 314 So.2d 383, 396 (La.App. 3 Cir.1975), writ den., 319 So.2d 440 (La.1975). Any section corner or quarter corner that is identified as having been established by an official survey of the United States government must stand as correctly located, however plain it may appear that the location is wrong, since the government surveys cannot be changed in an action at law between private individuals. Houston Ice & Brewing Co. v. Murphy Oil Co., 149 La. 228, 88 So. 802 (La.1921). An approved survey of public lands does not merely ascertain boundaries, it creates them, and a township survey completed and approved creates the boundaries of the township and the sections therein. Union Producing Co., et al, v. Placid Oil Company, 178 So.2d 392 (La.App. 1 Cir., 1965), writ refused, 248 La. 447, 179 So.2d 432 (La.1965), writ denied, 385 U.S. 843, 87 S.Ct. 31, 17 L.Ed.2d 75 (1966). Both the appellants and the appellees cite and agree on all of the foregoing authorities.
On the other hand, where the lines run by such survey lie on the ground, and whether any particular tract is on one side or other of that line, are questions of fact which are always open to inquiry in the courts. Russell v. Maxwell Land Grant Co., 158 U.S. 253, 259, 15 S.Ct. 827, 39 L.Ed. 971, 972 (1895); U.S. v. State Inv Co., 264 U.S. 206, 212, 44 S.Ct. 289, 68 L.Ed. 639 (1924); United States v. Hudspeth, 384 F.2d 683 (9 Cir. 1967).
The location of a boundary line is a question of fact to be determined by the trier of fact and this factual determination should not be reversed on appeal in the absence of manifest error. Morris v. Sigur, 584 So.2d 729, 730 (La.App. 4 Cir.1991), writ den., 589 So.2d 1054 (La.1991).
Thus while the trial court was powerless to correct errors in the official government survey, it was completely competent to locate the lines of that survey on the ground and to locate any given tract of land in relation thereto, subject only to manifest error review by this court.
Delacroix and Biloxi each assert that the claims of the other are inconsistent with this original survey.
All parties agree that the original surveyors made errors. There is some dispute over the number, location and effect of these errors. Experts testified on both sides of the controversy. Ultimately the case boiled down to one of weighing conflicting expert testimony. In the absence of manifest error, this Court does not have the authority to reverse the trial court's determinations in the matter of conflicting of expert testimony. Sistler v. Liberty Mut. Ins. Co., 558 So.2d 1106, 1111 (La.1990); Brewhouse, Ltd. v. New Orleans Public Service, Inc., 614 So.2d 118, 120 (La.App.1993); Miller v. Miller, 602 So.2d 330, 332 (La.App. 4 Cir.1992).
Messrs. Burke, Burnside, and Mayeaux testified as expert surveyors. The analyses of Messrs. Burke and Burnside were limited to a study of documents such as maps, diagrams, and plats. They did not attempt to retrace the steps of the official government surveyors on the ground. Mr. Mayeaux was the only expert who went out and tried to physically retrace the footsteps of the original government surveyors. This is important because it provides objective support for the trial court's decision to base its findings on Mr. Mayeaux's testimony rather than the testimony of Messrs. Burke and Burnside.[2] The reliability of a plat which is unsupported by any effort to retrace the lines on the ground is questionable at best. Barham v. Department of Highways, 431 So.2d 899, 902 (La.App. 2 Cir.1983).
Mr. Mayeaux's attempt to physically retrace the footsteps of the original surveyors is also important because those surveyors calculated the locations of section lines and corners and did not physically walk upon them, i.e., their locations were projections. *819 It is necessary to know where the surveyors actually were on the ground when they made their projections. For example, if the original government surveyors had projected that a corner was such and such a distance in such and such a direction, it is essential to know where they were when they made that projection if we are ever to reconstruct where they projected that corner to be. This is particularly important in this case where it appears that the surveyors were often not where they thought they were when they made their projections.
The trial court noted that Mr. Mayeux made greater use of topography than did the other two surveyors. Mr. Mayeux located natural objects and fixed monuments called for by the field notes on the ground. In matters of boundary, calls for natural objects and fixed monuments control those for distances. U.S. v. State Inv Co., 264 U.S. 206, 212, 44 S.Ct. 289, 290-91, 68 L.Ed. 639 (1924) In ascertaining the boundaries of surveys or patent, the universal rule is this: that whatever natural or permanent objects are embraced in the calls of either, these have absolute control, and both courses and distances must yield to their influence. Brown v. Huger, 62 U.S. 305, 21 How. 305, 306, 16 L.Ed. 125, 129 (1859); City of New Orleans v. Joseph Rathborne Land Co., 24 So.2d 275 (La.1945). The legal guides for determining the question of boundary or the location of a land line, in order of their importance, are natural monuments, artificial monuments, distances, courses and quantity... City of New Orleans v. Joseph Rathborne Land Co. at 281; Meyer v. Comegys, 147 La. 851, 86 So. 307 (La.1920). It is well established that natural objects and monuments are more important than courses and distances in retracing old surveys and ascertaining the location of unknown and disputed lines. Cheramie v. Vegas, 194 So.2d 189, 192 (La.App. 1 Cir.1966), writ refused, 250 La. 907, 199 So.2d 918 (La.1967); Barham v. Department of Highways, 431 So.2d 899 (La.App. 2 Cir.1983); Liner v. Terrebonne Parish School Board, 519 So.2d 777 (La.App. 1 Cir.1987), writ den. 521 So.2d 1173 (La. 1988), cert. den. 488 U.S. 827, 109 S.Ct. 79, 102 L.Ed.2d 55 (1988); Morris v. Sigur, 584 So.2d 729 (La.App. 4 Cir.1991), writ den., 589 So.2d 1054 (La.1991).
But in re-establishing the lines of a survey, the footsteps of the original government surveyors should be followed, and it is immaterial if lines actually run by him are not correct. Galt v. Willingham, 11 F.2d 757, 758 (5 Cir.1926). The original survey as it was actually run on the ground controls, even if the boundary was incorrect as originally established. United States v. Doyle, 468 F.2d 633, 636 (10 Cir.1972); United States v. Citko, 517 F.Supp. 233 (E.D.Wis. 1981).
The basic error made by Powell and Richardson was that they were north of their intended position in their traverses around Lake Athanasio. This had the effect of throwing off the northeast corners of Sections 36, 25, and 24 as these corners were established by calls from positions that were farther north than Powell and Richardson realized. This caused the boundary between sections 24 and 13 to be farther north than intended, which is the crux of this litigation. This also prevented these sections from lining up properly along the range line with sections in the adjoining township.
In theory each township should be a perfect square, six miles on a side, consisting of thirty-six sections which should be perfect squares of one square mile each.[3] The official government plat appears to be based on this idealized conception of perfectly regular lines and sections. However, it cannot be reconciled with the field notes of the surveyors upon which it was supposed to be based. In the event of such a conflict the field notes control, because the plat is made from the field notes. Whiting v. Gardner, 80 Cal. 78, 22 P. 71. The question to be answered by courts in such cases is, where were the lines run in the field by the government surveyor? Harrington v. Boehmer, 134 Cal. 196, 66 P. 214, 215 (1901).
State v. Aucoin, 206 La. 787, 20 So.2d 136, 154 (La.1944) does not contradict this when it *820 states that: "When lands have been disposed of by the government according to a line appearing on an official plat of a government survey, approved by the Surveyor General, the location of the line shown on the official plat is controlling." Aucoin did not involve a conflict between the plat and the field notes. Aucoin made it clear that the goal is to retrace the lines on the ground where they were actually run by the official surveyor:
What Shutts [the retracing surveyor] was to doand what he didwas to retrace the line where Gorlinski [the original official surveyor] should have located the mean high-water line. Shutts started at a known or established corner and thence followed the courses and distances given in Gorlinski's field notes. It matters not now whether the mean high-water mark was actually on the line where Gorlinski ran his traverse in 1857, or was in fact 1,000 feet northeast from the line which Gorlinski ran.

Aucoin 20 So.2d at 154.
It is not contested that the government survey in question was accepted and approved. The trial court acknowledges the acceptance, but notes that the approval was given "grudgingly." The trial court in its findings was highly critical of the official U.S. government survey.[4]
Delacroix argues that these findings show that the trial court attempted to correct the errors in the official survey which all parties agree is beyond the authority of that court or this Court. We do not accept that interpretation of the trial court's findings. This Court is of the opinion that the trial court was merely trying to elaborate on its finding that the original survey was erroneous. Mr. Mayeux re-established where the original surveyors actually were, "even if erroneous." Mr. Mayeux and the trial court re-established the original survey, errors and all. They did not attempt to correct it. Had Mr. Mayeaux attempted to correct the original survey his townships would have consisted of 36 perfect square mile sections. Additionally, Sections 13 and 24 on one side of the range line would have lined up perfectly with Sections 18 and 19 on the other side of the range line. Instead the plat of Mr. Mayeux's reconstructed survey contains sections which are not only blatantly irregular in shape[5], but the sections on either side of the range line are way out of sync, thus preserving the effect of the errors made by the original government surveyors.[6]
The trial Court also weighed the competing testimony of the expert geomorphologists, Dr. Van Heerden and Mr. Kemp. These witnesses testified concerning the changes in topography since the original government survey because of such factors as erosion, accretion, and changes in water courses. The trial court indicated that it found the testimony of the Biloxi expert, Dr. Van Heeden, more persuasive than that of Mr. Kemp, because it was consistent with the eastward shift of the monument "Spar". We cannot say that the trial court was manifestly erroneous in making this judgment call. Nor can we say that the trial court was manifestly erroneous when it decided to place more *821 weight on the survey testimony than on the geomorphology testimony.
The findings of the trial court represent an impressive, painstaking, laborious, and detailed analysis of the facts of this extremely complicated case. We accept them as written and incorporate them herein by reference.
This case involved genuine disagreements over survey errors and the effect of the passage of many years on topography. Delacroix cannot be said to have fabricated a dispute where no legitimate dispute existed. Our finding of no manifest error in no way implies that Delacroix's appeal is frivolous. If such were the case, an affirmance in a fact based case would be tantamount to an ipso facto finding of frivolousness. Such a standard would stifle appeals, and would be contrary to the policy of the courts of this state which says that appeals are favored. Biloxi's claim for frivolous appeal is denied.
For the foregoing reasons the judgment of the trial court is affirmed.
AFFIRMED.
NOTES
[1] The pertinent portions of the judgment of the trial court are:

IT IS ORDERED, ADJUDGED AND DECREED that Biloxi Marsh Lands Corporation and the Class of Biloxi Royalty Owners are hereby declared to be the owners in fee simple and entitled to the mineral royalties attributable to certain mineral royalties attributable to certain mineral leases in favor of Texas International Petroleum Corporation and its successor, Total Minatome Corporation, affecting fractional Section 24, Township 15 South, Range 17 East, included within the 7900' RA SU A and SU B units from property described as follows:
That certain portion of ground located in St. Bernard Parish, State of Louisiana, known as fractional Section 24, Township 15 South, Range 17 East, according to the Retracement Survey by Michael P. Mayeux, Registered Land Surveyor, dated November 30, 1987. The common line between the lands of Delacroix Corporation in Section 13, Township 15 South, Range 17 East, and the lands of Biloxi Marsh Lands Corporation in Section 24, Township 15 South, Range 17 East, commences at the northeast corner of Section 24 (being the southeast corner of Section 13) at its intersection with the range line between Township 15 South, Range 17 East and Township 15 South, Range 18 East, at a point having the coordinates of X = 2,602,267.43' and Y = 393,793.27', thence along the common boundary of Sections 13 and 24, south 87 [degrees], 27', 11" west, to the Meander Corner having the coordinates of X = 2,599,194.17' and Y = 397,657.46'.
Provided however, that only those portions of the above described area that are not subject to the ownership of the State of Louisiana, are hereby declared to be subject to the above referred to mineral royalties.
[2] Mr. Burnside was very evasive when cross-examined on this issue. Inferences may also be drawn from the trial court's referral to Mr. Burke's "unusual role" in these proceedings. Therefore, in addition to the fact that the survey procedures Mr. Mayeux employed were by their nature more reliable than those employed by Messrs. Burke and Burnside, we may infer that the trial court had reason to find Mr. Mayeux's testimony more disinterested and credible.
[3] Some slight deviation will occur because of the natural curvature of the earth's surface, but this effect is irrelevant to the comparatively small distances involved in this case.
[4] In the written reasons the trial court stated:

The reluctant approval of the Director of the Land Office indicated that it was a worthless survey and the land portions would have to be resurveyed because of the lack of corners and non-connectability of the meanders to the survey.
* * * * * *
We know the field notes and the plat are flawed. To ask this court to accept the field notes and/or the plat as conclusive evidence of the location of township and section lines is akin to asking the court to admire the emperor's new clothing.
* * * * * *
The plat being flawed must yield to the survey called for by Mr. Young in 1848 and the court allows the established south line of Section 13, Township 15 South, Range 17 E. by Mr. Mayeaux to be the place where the deputy surveyor actually made their traverse even if erroneous.
[5] The conclusiveness of an inaccurate original survey is not affected by the fact that it will set awry the shapes of sections and subdivisions. United States v. Doyle; United States v. Citko.
[6] Each township was surveyed as a separate entity by the original government surveyors. Smith v. Almond, 157 La. 265, 102 So. 330 (1924). Thus townships that should line up in theory may, as in the instant case, fail to do so in fact.